Terry ZEMPEL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–304.

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1976.

G. Gail Craytor, Broken Bow, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Terry Zempel, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, McCurtain County, Case No. CRF–75–116, for the offense of Harboring a Fugitive From Justice, in violation of 21 O.S.1971, § 440. His punishment was fixed at one (1) year imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Kenneth McKee testified that on July 25, 1975, he was employed as the Undersheriff of McCurtain County and

that at approximately 9:00 p. m. Lonnie Graves, Curtis Moody, Charles Warren, Lee Ray Sanders, and Jimmy Dean Sanders escaped from the McCurtain County Jail. Charles Warren was incarcerated in the jail, charged with grand larceny. He went to the defendant's residence at approximately 10:30 p. m. and informed defendant that Warren had escaped. Defendant stated that he had not seen Warren. He observed Warren in the defendant's home at approximately noon the following day.

Sheriff L. D. Gilbreath testified that on July 25, 1975, Charles Warren was being held in custody, charged with grand larceny and revocation of a suspended sentence. He testified that Warren and four other persons left the jail without authority of his office.

Deputy Sheriff Don Winship testified that he went to the defendant's home some time after noon on the 25th day of July. He approached the house through the back door and had a conversation with the defendant. He informed the defendant they were looking for Charles Warren. Defendant stated that Warren had been to his house the night before but had left with two colored subjects. Shortly thereafter, he observed Red Dale bringing Charles Warren out of the defendant's bedroom.

On cross-examination he testified that the officers went to the defendant's house because they had received information from an informant that Warren was hiding there.

Glenn (Red) Dale testified that he was employed as an investigator for the District Attorney's Office. He stated that he and other officers proceeded to the defendant's house and knocked on the front door. He entered the house and observed other officers coming in the back door. He conducted a search for Charles Warren and found him hiding in a closet in the bedroom.

Defendant testified that on the evening of July 24, 1975, some officers came to his house and told him that Lee Ray Sanders and Lonnie Graves had escaped jail. They advised him that they were dangerous and that if they came to his house defendant should shoot them. He stated the next morning when he awoke he observed Charles Warren in his house. He testified that he knew Warren had been in trouble but did not know he had escaped from jail. Defendant testified that some time later several officers, heavily armed, arrived at his house and came in both the front and back doors. They asked him if Warren was in the house. He stated he was afraid because the officers had machine guns and, therefore, told them that Warren was not there.

Jerry Berth testified that he was present at the defendant's home when the officers came to the house on the evening of July 24. The officers advised the defendant and himself that Lee Ray Sanders and a "black murder" had escaped from jail. The officers did not mention that Charles Warren had also escaped. The following day several officers, armed with machine guns, came to the house looking for Warren.

Michael Thompson testified that he was present at the defendant's home on the evening of July 24, 1975, and that several officers came to the house and said that Lee Ray Sanders and some "black dude" had escaped jail. The officers did not mention the name Charles Warren.

In rebuttal Deputy Sheriff Lester Blake testified that he went to the defendant's home on the afternoon of July 25. He denied that any officer was armed with a machine gun.

Deputy Sheriff J. W. Fields testified that he went to defendant's home on the evening of July 24, and that the defendant was informed that Charles Warren had escaped from the County jail.

■ The first three assignments of error generally assert that the trial court erred in allowing testimony of evidence gathered by means of or as a result of an illegal search of the residence of the de-

fendant. The evidence adduced was that Charles Warren escaped from the Mc-Curtain County jail at approximately 9:00 p. m. on July 24, 1975. Some time after noon on July 25, 1975, the officers received information from an informant that the escapee was at the defendant's house. The officers immediately proceeded to defendant's house and found Warren hiding in the closet of a bedroom. Investigator Dale testified that the investigation of the escape was continuous from the time Warren departed the jail. We are of the opinion that the evidence obtained was not the fruit of an illegal search but rather was the product of a statutory seizure of an escapee. Title 22 O.S.1971, § 207, provides:

"If a person arrested escape or be rescued, the person from whose custody he escaped or was rescued, may immediately pursue and retake him, at any time, and in any place in the State."

We therefore find the first three assignments of error to be without merit.

The defendant asserts in his fourth assignment of error that the trial court erred in submitting instruction number 5 to the jury. Instruction number 5 states as follows:

"You are instructed that under the law of Oklahoma if a person who has been lawfully arrested escapes or is rescued, the person from whose custody he escaped or is rescued, may immediately pursue and retake him, at any time, and in any place in the State.

"To take the person escaping or rescued, the person pursuing may, after notice of his intention and refusal of admittance, break open an outer or inner door or window of dwelling house."

■ We need only observe that the record does not reflect that the defendant objected to the instruction. In *Hathcox v. State,* 94 Okl.Cr. 110, 230 P.2d 927 (1951), we stated in the thirteenth paragraph of the Syllabus as follows:

"A defendant may not be heard to complaint (sic) of a general instruction which contains a correct abstract statement of law on the ground that it is not applicable to the issues of the case, where said instruction was not objected or excepted to and the court's attention was not called to the alleged insufficiency in any manner, unless this court can say after consideration of the instruction complained of, together with all other instructions, that defendant has been materially prejudiced by reason of the giving of such instruction."

We are of the opinion that although the latter part of the instruction was inapplicable to the instant case the same was not so fundamentally erroneous as to cause prejudice to the defendant.

■ The defendant contends in his fifth assignment of error that the prosecuting attorney made improper remarks in his closing argument. This assignment of error is improperly before this Court inasmuch as the closing arguments were not made part of the appellate record. In *Hathcox v. State,* supra, we cited with approval *Kennamer v. State,* 59 Okl.Cr. 146, 57 P.2d 646, wherein the Court stated:

" 'Ordinarily error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel.' "

In his sixth assignment of error defendant asserts that the trial court erred in suppressing certain portions of defendant's closing argument. We again must find this assignment of error to be without merit for the reasons stated in the discussion of assignment of error number five.

In his final assignment of error, defendant contends that the trial court erred in accepting the verdict of the jury because of the accumulation of errors heretofore discussed. Inasmuch as we have previous-

ly found these assignments of error to be without merit, we likewise find the final assignment of error to be without merit.

For the above and foregoing reasons, the judgment and sentence is, accordingly, *AF-FIRMED*.

BRETT, P. J., and BLISS, J., concur.