THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DUANE STIBAL, Defendant-Appellee.

First District (5th Division)   Nos. 77-432 through 77-437 cons.

Opinion filed January 13, 1978.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:
These consolidated appeals are taken by the State under Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)) from an order of the circuit court of Cook County suppressing evidence related to charges that defendant, Duane Stibal, was in possession of controlled substances. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402.)[1] The issue presented is whether the police lawfully entered defendant's premises to effect his arrest for battery thereby permitting them to seize evidence found in plain view. Such material was also used to support a search warrant thereafter issued for the search of defendant's home.

Although defendant has not filed a brief, we may consider the appeal on the merits since the record is simple and the claimed errors may be resolved without the aid of an appellee's brief. See *City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 401-02, 367 N.E.2d 1305; *People v. Bohannon* (1976), 38 Ill. App. 3d 489, 348 N.E.2d 249.

The record shows that on August 18, 1976, Cook County sheriff's officer Andrew Douvris received an arrest warrant for defendant charging him with battery. The warrant had been issued by a suburban police department and was placed with the sheriff for service.

Officer Douvris testified at the hearing on the motion to suppress that he went to 7660 South Lorel in Burbank, Illinois, to execute the arrest warrant. He was accompanied by uniformed police officers with several marked police vehicles. He had reason to believe defendant was going to be at that residence because his vehicle, a green station wagon, was parked in the driveway and "to our idea he had no other vehicle and we presumed he was in the address." He had the arrest warrant with him and showed it to a female who opened the door. He also showed his star and identification card. The warrant was folded, with the part stating "People of the State of Illinois" exposed to view. She refused to admit him and refused to state whether defendant was in the residence. During a search of the residence in an attempt to find defendant, he observed a stainless steel revolver and a police-type radio on the floor in the family room. A quantity of white pills was on the desk.

As a result of the seizure of this substance, the police secured the house and Officer Douvris obtained a search warrant later that afternoon. The affidavit for the warrant stated:

"On August 18, 1976, at 3:30 PM, I, Officer Douvris, went to the

---

[1] The consolidated appeals also include a charge against defendant for battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a)) but prosecution of that offense does not appear to have been affected by the order now at issue.

residence at 7660 Lorel, Burbank, Ill., to execute arrest warrant #76—MC5—55069. The warrant was for the subject Duane Stibal. I approached the house knocked at the door and announced my office. A young female came to the door and I explained the situation regarding the subject Stibal. The female refused to allow me to enter the residence to search for the subject Stibal. The subject Stibal's only vehicle a late model green Rambler wagon was parked in the driveway and I had every reason to believe that the subject Stibal was aware of the warrant and was attempting to elude myself and my fellow officers. I gained admittance to the residence and in the process of searching the recreation room for the subject Stibal I observed laying on the floor a Rugar 6 Shot Revolver, on the desk I observed a quantity of White Capsules (I have been envolved [sic] in Narcotics investigations for a period of 20 months in that time I have been trained and have performed numerous field tests of unknown substances to determine if they were in fact a controlled substance. I performed a field test of the White Capsules and the result was positive for a controlled substance. I have sent numerous substances that I have tested in the field to the crime lab for analysis and in each instance my field test was corroborated by the lab findings.) And also on the floor I observed a Motorola Police type radio and radio head. At this point I and my fellow officers secured the premises at 7660 Lorel, Burbank, Illinois. I had for a period of 3 days prior to executing the arrest warrants set up a surveillance of the residence at 7660 Lorel, Burbank, Illinois and I observed numerous people comming [sic] and going from the house after making what appeared to be a narcotics purchase. Based on the above facts I believe that there is more contraband in the residence at 7660 Lorel, Burbank, Illinois which constitutes the offense of Possession of a Controlled Substance and I am requesting permission to search within the residence at 7660 Lorel Burbank, Illinois. All this occurred in the County of Cook, State of Illinois."

Tammy Wilken, a 15-year-old girl, testified on behalf of defendant that about 12:30 p.m., defendant asked her and Debbie Marion to go to his house and answer phone calls and straighten up. When she and Debbie arrived there about 3 p.m., defendant was not present. Defendant had told her he was going for a bike ride. At approximately 3:20 p.m., she answered a knock on the door and observed several men, one of whom was in uniform. One man, who was not in uniform, requested admittance. Another officer, who wore a uniform, showed them a badge. They were told that if they did not allow them inside the girls would be charged with obstruction. She asked why they wanted to come into the house and they

said they had a warrant for defendant's arrest, which did not have to be shown to the girls, and which they did not produce. She told the officers that defendant was not in the house, but was out on his motorcycle. The officers then pushed the girls aside and went in. She heard one officer make a telephone call saying they had to get a search warrant because they were finding "things."

Debbie Marion, a 17-year-old girl, corroborated the testimony of Tammy Wilken. The men said they had reason to believe defendant was at home because his car was there. The girls told the men that defendant was not home. The men said they had a warrant but did not show it when the girls asked to see it. When they refused to let the men inside, the men forced their way into the house and started searching.

The court specifically said it believed the testimony of the two young women, and it felt the critical question was whether the initial police entry onto the premises was legal. The court concluded that the officers did not properly exhibit the warrant and that the initial entry was illegal and granted the defendant's motion to suppress.

OPINION

■■■ An officer executing an arrest warrant is authorized to enter a building where the person is "or is reasonably believed to be" if he is refused admittance after announcing his authority and purpose (*People v. Barbee* (1966), 35 Ill. 2d 407, 411, 220 N.E.2d 401), and an officer is justified in eliminating all places where the arrestee may be hiding before moving on. (*People v. Sprovieri* (1969), 43 Ill. 2d 223, 227, 252 N.E.2d 531.) In this case the evidence is uncontroverted that defendant's automobile was at the premises when the officers arrived to execute the arrest warrant for defendant. At least one officer was in uniform and marked police vehicles were also conspicuously present. Although the court found the officers did not properly exhibit the warrant, it is clear the officer had the warrant in his possession. Moreover, it was not necessary for the officer to have actual possession of the warrant provided he knew it had been issued. (*People v. Evans* (1976), 42 Ill. App. 3d 902, 908, 356 N.E.2d 874.)[2] Under the circumstances we find that the police officers were improperly refused admittance after announcing their authority.

■■ One commentator has said:

"[T]he Illinois decisions provide a discernible standard: unless the police know that the suspect is *not* within, they may enter to arrest." (Haddad, *Arrest, Search and Seizure: Six Unexamined Issues in Illinois Law*, 26 DePaul L. Rev. 492, 511 (1977).)

---

[2] An arrest is authorized by statute if the officer "has reasonable grounds to believe that a warrant for the person's arrest has been issued." Ill. Rev. Stat. 1975, ch. 38, par. 107—2(b); *cf. People v. Wolgemuth* (1977), 69 Ill. 2d 154.

There is no suggestion in the record the police definitely knew defendant was not at home when they sought to arrest him. It has also been noted that the test applied in some jurisdictions would require probable cause to believe an accused was inside before entry is made. (Haddad, at 513.) In the circumstances of the present case there was compliance with this latter standard. The officers knew defendant's automobile was in the driveway and they believed this was his sole means of transportation in a suburban area. Such factors would allow the police to reasonably believe defendant was present.

■■ Upon initial entry of defendant's house, the officers observed the contraband listed in the affidavit for search warrant in plain view during their search of the premises for defendant. (*People v. Morales* (1971), 48 Ill. 2d 396, 400, 271 N.E.2d 33.) Accordingly, there was probable cause to issue the search warrant. We conclude that the trial court erred in granting defendant's motion to suppress.

Accordingly, the order of the circuit court suppressing the evidence is reversed and the cause remanded.

Order reversed and cause remanded.

SULLIVAN, P. J., and WILSON, J., concur.