408 A.2d 1120

**COMMONWEALTH of Pennsylvania**

v.

**Edward TEREBIENIEC, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed Aug. 10, 1979.

512

514

---

Martin A. Ostrow, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that: 1) the evidence was insufficient to prove that he did not withdraw from the alleged conspiracy; 2) his arraignment on closed circuit television violated his constitutional rights to a fair arraignment and a fair trial; 3) amendment of the indictment against him to include the name of a coconspirator was improper and prejudicial; 4) the suppression court erred in failing to suppress an inculpatory statement allegedly the product of unnecessary delay between arrest and arraignment; and 5) the suppression court erred in failing to suppress the statement allegedly the fruit of arrests and a search made without probable cause. We disagree and, accordingly, affirm.[1]

On December 6, 1977, a court sitting without jury convicted appellant of recklessly endangering another person, criminal conspiracy, possession of an instrument of crime, risking catastrophe, arson-endangering persons and arson-endangering property. After denying post-verdict motions, the court sentenced appellant to concurrent terms of imprisonment of one to three years on the charge of criminal conspiracy, one to three years on the charge of possession of an instrument of crime, two to six years on the charge of risking catastrophe, three to twelve years on the charge of arson-endangering persons and one and one half years to four years on the charge of arson-endangering property.

On the evening of November 27, 1976, appellant attended a party at the home of Marc Shambor. Around 1:00 A.M. the following morning, appellant and several others from the party went to a nearby bar, where they engaged in a fight with a group of blacks. Police Officer William Murtha

---

1. Appellant also challenges sufficiency of the evidence to support conviction for all the charges. We find the evidence sufficient to support the verdict. *See* 18 Pa.C.S.A. §§ 2705 (recklessly endangering another person), 903 (conspiracy), 907(a) (possession of an instrument of crime), 3302 (risking catastrophe) and 3301 (arson) (Supp.1978–79).

arrived to quell the disturbance and heard appellant shout that he was going to "get" the blacks that night. Appellant and his comrades returned to Shambor's home, where he, Shambor and two others filled four beer bottles with gasoline and inserted a rag wick in the top of each bottle. The four discussed going to the Hillside Apartments, 3901 Manayunk Avenue, Philadelphia, where, they believed, blacks lived. Each carried a bottle to the apartments and lined up in front of one of the buildings. At least one of the group ignited the contents of his bottle and threw it at their target, causing a fire which destroyed two apartments and extensively damaged four others.

About 5:45 A.M., Officer Murtha, after hearing a report of the firebombing, spotted appellant and another white male in the vicinity of the apartments. He stopped appellant, who appeared out of breath, and decided to take him to the police station. The police obtained his name, address and similar information. At approximately 10:00 A.M., Detective Craig Sterling informed appellant of his *Miranda* rights and questioned him for about 30 minutes. Appellant denied any involvement in the incident. The police moved appellant to another building, where he waited for about 90 minutes for his father. His father arrived around 4:00 P.M. and took him home.

The next day, November 29, the police received information implicating appellant in the firebombing. About midnight, they filed a complaint before a magistrate, who issued a warrant to arrest appellant. Carrying the warrant, several officers arrived at appellant's home at about 12:45 A.M., November 30. They knocked, introduced themselves and announced the purpose of their trip to a woman who answered and identified herself as appellant's mother. The woman permitted the officers to enter and stated that she needed to go upstairs to see if appellant were home. She was gone for five to ten minutes. During that time, the officers heard noises and saw shadows indicating that more than one person was upstairs. The woman returned with a man, who identified himself as appellant's father, and as-

sured the officers that appellant was not home. The officers, however, searched the house and discovered appellant hiding in the closet of one of the bedrooms upstairs. They placed him under arrest at about 1:10 A.M.

Appellant arrived at the police station at about 1:50 A.M. after administrative processing, Detective John Mozzachio informed appellant of his *Miranda* rights at approximately 2:15 A.M. Appellant immediately began to give an oral inculpatory statement. The statement was completed and reduced to writing about 3:00 A.M. In this statement, which the Commonwealth, over objection, introduced at trial, appellant admitted participation in the events leading to the firebombing but asserted that he only "dropped" his bottle in shrubbery and ran away.

Around 3:30 A.M., the officers took appellant to the scene of the crime and conducted an hour long search for the bottle he said he had thrown away. The officers did not locate the bottle and returned with appellant to the station around 5:00 A.M. They did not question appellant further and had him arraigned sometime after 9:00 A.M., after approximately eight hours of custody. The arraigning court conducted the procedure on closed circuit television.

Appellant first argues that there was insufficient evidence to convict him on each of the charges because he withdrew from the conspiracy before the contemplated acts occurred. He testified that, although he helped to fill the bottles with gasoline and, along with each of the three others, carried a bottle to the Hillside Apartments, he wanted only to "scare" the people who lived there. He also testified that he had announced his withdrawal, thrown his bottle away and run off before the attack began. One of the other participants also testified that appellant had shouted that he was "not going through with it." Another participant, however, testified that, although next to appellant, he had not heard his announcement of withdrawal. Moreover, when the police searched the area on November 30, they failed to discover the bottle. Further, in his statement, appellant did not mention his alleged declaration of withdrawal. Indeed, in

this statement, he stated that he discarded his bottle only after one of the others had thrown a bottle at the building. Appellant also testified that he had gone to the apartments "to burn something," and that he had walked ahead of the others, leading the way.

■ Appellant clearly did not end his participation in the conspiracy "before the commission of the crime [became] so imminent that avoidance [was] out of the question." *Commonwealth v. Roux*, 465 Pa. 482, 490, 350 A.2d 867, 871 (1976); *accord, Commonwealth v. Spriggs*, 463 Pa. 375, 344 A.2d 880 (1975) (actor alleging abandonment or withdrawal must end participation and communicate to conspirators intention to withdraw "appreciably" before crime occurs); *see* 18 Pa.C.S.A. § 903(f) (Supp.1978–79) (renunciation of participation in conspiracy); 18 Pa.C.S.A. § 903(g) (abandonment). Notwithstanding the testimony favorable to appellant, which the trier of fact was free to disbelieve, *e. g.*, *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979), the evidence is sufficient to show that he neither ended his participation "appreciably" before commission of the contemplated offense nor communicated to his coconspirators his intention to withdraw. *See Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Roux, supra.*

■ Appellant contends that his arraignment deprived him of constitutional rights because it was performed on closed circuit television. Without offering specific allegations of prejudice, he argues that this procedure created "a circus type of behavior" and denied him a fair arraignment.

Appellant's arraignment differed from a traditional arraignment only in that the court communicated with him by way of closed circuit television. The arraignment was no more open to the public than would have been arraignment in person and created no extra publicity. The Rules of Criminal Procedure demonstrate that reliance upon mechanical and electronic devices in pretrial proceedings can be salutary and are permissible so long as they do not impair the rights of the accused. *See* Pa.R.Crim.P. 141(c)(4) (per-

mitting accused to make mechanical or electronic record of preliminary hearing); *Wilson v. Blake*, 475 Pa. 627, 381 A.2d 450 (1977) (importance of Rule 141(c)(4)); Pa.R.Crim.P. 27 (allowing mechanical recording of hearings as an aid to preparation of the written record). Appellant's arraignment by closed circuit television bore none of the characteristics of the "circus" atmosphere condemned in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and did not in any way subject him to a greater risk of prejudicial publicity before trial. *See generally Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 389 A.2d 425 (1978). We find no unconstitutional prejudice inherent in appellant's arraignment.

■ Appellant argues that the court erred in permitting the Commonwealth to amend the indictment to include the name of Marc Shambor as an alleged coconspirator. Appellant baldly asserts that the amendment prevented him from preparing a full defense. The indictment originally charged appellant with conspiracy and named two others as coconspirators. Pa.R.Crim.P. 220 provides that the court may allow amendment of an indictment "provided the indictment as amended does not charge an additional or different offense."

In *Commonwealth v. Brown*, 229 Pa.Super. 67, 323 A.2d 845 (1974), this Court upheld an amendment introducing the name of a coconspirator where the indictment originally charged conspiracy but failed to include the name of any conspirators. *A fortiori*, amendment of an indictment charging conspiracy to add the name of a third conspirator is unobjectionable *Cf. Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977) (plurality opinion) (indictment which clearly encompassed charge of murder of third degree could be amended to include that charge specifically). The amendment did not charge a new offense, for appellant had been charged with the same conspiracy in the original indictment. Appellant fails to identify any harm the amendment caused him in preparing for trial and we see none. Thus, insertion of the name of an additional conspirator did not violate Rule 220.

■ Appellant contends that his inculpatory statement was the product of unnecessary delay between arrest and arraignment in violation of Pa.R.Crim.P. 130 and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972).[2] Appellant gave his statement following his second arrest. Excluding the time required to transport him to the station, *Commonwealth v. Hill*, 267 Pa.Super. 264, 406 A.2d 796 (1979), the delay between arrest and the time appellant began to give his statement was less than 30 minutes. Appellant's statement could not have been the product of so short an interval, almost all of which was consumed by administrative processing. *See Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979); *Commonwealth v. Hill, supra.*

■ Appellant advances the novel proposition that calculation of the period involved must include the time he was held after his first arrest. Without deciding whether a valid *Futch* claim may be based on cumulation of time during more than one detention, we believe that the circumstances of appellant's case do not permit such cumulation. Appellant's earlier arrest occurred two days before the second, he was questioned then for only half an hour and did not incriminate himself. In *Commonwealth v. Marabel*, 445 Pa. 435, 283 A.2d 285 (1971), the appellant was questioned on three occasions. The police questioned him on the second occasion for about three hours but he did not then give any incriminating information. Two days elapsed between the second occasion and the third, when, after extensive interrogation and a polygraph examination, the appellant gave an incriminating statement. The Court concluded that the break between the second and third interrogations dissipated "any psychological pressure that might have developed in the two prior interrogation periods." *Id.*, 445 Pa. at 449 n. 3,

2. Appellant was arrested before May 16, 1977, the effective date of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), which held inadmissible any statement obtained after arrest and before arraignment where the accused is not arraigned within six hours of arrest. *See Commonwealth v. Van Cliff*, 483 Pa. 576 n. 8, 397 A.2d 1173 n. 8 (1979); *Commonwealth v. Hill*, 267 Pa.Super. 264, 266 n.*, 406 A.2d 796, 797 n.* (1979).

283 A.2d at 292 n. 3. For the same reason, here, where the pressure brought to bear upon appellant was far less intensive and of much shorter duration, the two day break between the two sessions of questioning ensures that appellant's inculpatory statement was not a product of the combined time he was held following the two arrests.

Appellant asserts that each of the two arrests was without probable cause and that, therefore, his inculpatory statement after the second arrest should have been suppressed as unconstitutionally obtained. Regardless of whether the first arrest was proper, the connection between the statement and that arrest was sufficiently attenuated to dissipate any taint. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Nothing appellant said at his first interrogation was incriminating or necessarily impelled him to give an inculpatory statement at the second questioning or led to his second arrest. Rather, his second arrest resulted from information independently received. A different officer warned appellant of his *Miranda* rights, informed him that two of his coconspirators had implicated him in the crime and conducted the subsequent interview. In *Commonwealth v. Marabel, supra,* our Supreme Court found that an inculpatory statement given during a third session of interrogation was sufficiently removed from an illegal arrest. There the appellant at the earlier questioning did not provide incriminating information, and said nothing at the earlier session which would later have impelled him to incriminate himself, the police subsequently arrested him properly on the basis of information independent of any they learned at the previous session, there occurred at the third session a confrontation with another party who implicated the appellant, the third session occurred two days after the second, different officers questioned the appellant at the third interrogation and they informed him of his *Miranda* rights. Consequently, appellant's claim that the statement was the product of the first arrest is without merit.

■ Appellant also argues that his second arrest was without probable cause. Before arresting appellant, the police obtained an arrest warrant from a magistrate by providing information from two of appellant's coconspirators that he had engaged in planning and executing the crime. We do not hesitate to conclude that this information supplied probable cause to believe that appellant had participated in the firebombing.

Lastly, appellant argues that his inculpatory statement should have been suppressed because the arresting officers engaged in a constitutionally prohibited entry and search of his home while attempting to execute the arrest warrant. According to appellant, the officers, without a search warrant, could not enter or search his house. Appellant's claim requires us to determine for the first time in Pennsylvania whether officers armed with a valid warrant for arrest may enter the home of a suspect named in the warrant and conduct a search there to locate him.

■ In those jurisdictions which have considered the question, the prevailing rule is that a valid arrest warrant confers authority upon officers to enter a suspect's home to execute the warrant. *See United States v. Hammond*, 585 F.2d 26 (2d Cir. 1978) (collecting cases); *United States v. Woods*, 560 F.2d 660 (5th Cir. 1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978); *United States v. Brown*, 151 U.S.App.D.C. 365, 467 F.2d 419 (1972) (dictum); *Davenport v. State*, 568 P.2d 939 (Alaska 1977); *People v. Stibal*, 56 Ill.App.3d 385, 20 Ill.Dec. 652, 372 N.E.2d 931 (1978). This authority is conditioned, however, upon existence of probable cause to believe that the suspect is at home. *United States v. Woods, supra; Fisher v. Volz*, 496 F.2d 333 (3rd Cir. 1974); *People v. Trull*, 64 Ill.App.3d 385, 20 Ill.Dec. 960, 380 N.E.2d 1169 (1978); *State v. Jones*, 274 N.W.2d 273 (Iowa 1979); *see Commonwealth v. Shaw*, 476 Pa. 543, 383 A.2d 496 (1978) (police apparently had probable cause to believe that appellant was at home, but lacked probable cause to believe he had committed crime); *cf. United States v. Campbell*, 581 F.2d 22 (2d Cir. 1978) (exigent circumstance

justifying entry and search without arrest warrant); *United States v. Cravero*, 545 F.2d 406 (5th Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), *reh. denied*, 431 U.S. 960, 97 S.Ct. 2689, 53 L.Ed.2d 279 (1977) (entry and search of premises of third party); *United States v. Brown, supra* (same).

We think this rule sound. One the one hand, common sense dictates that law officers, in possession of a valid arrest warrant, hold authority to take reasonable steps to execute the warrant. Many decisions recognize that officers, acting under probable cause to arrest but without a search warrant may enter a residence to perform the arrest. *See, e. g., United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (officers with authority to arrest and not in hot pursuit properly entered premises of defendant who attempted to escape arrest by retreating inside); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1647, 18 L.Ed.2d 782 (1967) (entry and search of premises of third party by officers in hot pursuit); *cf. Commonwealth v. Dial*, 445 Pa. 251, 285 A.2d 125 (1971) (when police with search warrant knocked, identified themselves and requested entrance, then heard sound of running inside, they could break down door to enter). A contrary rule would unduly hamper law officers in performance of their duties. Indeed, it would be anomalous and a senseless restraint upon police to permit them, when they hold a search warrant, to enter a residence by breaking down the door after they hear sounds of escape emanating from inside, *see Commonwealth v. Dial, supra*, but require them, for lack of a search warrant, to stand helplessly at the threshold while a suspect named in an arrest warrant secretes himself about the house or flees. *See United States v. Smith*, 171 U.S.App.D.C. 342, 520 F.2d 74 (1974) (entry to execute arrest warrant subject to same criteria as entry where officer with search warrant announces self and is refused admittance). On the other hand, the requirement of probable cause to believe that the suspect is within prevents the police from indiscriminately entering and searching any home where they hope an ac-

cused may be. Probable cause to arrest someone does not authorize police to enter the homes of everyone. *See Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966) (injunction restraining police from conducting house to house search for suspects); *cf. Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (police seeking suspect could not perform dragnet arrests of 24 individuals, for none of whom they had probable cause to arrest).

 Probable cause existed to believe that appellant was on the premises, justifying the officers' entry of the home. The residence entered was the home of appellant, whom the police knew in fact lived there and had been there recently. The officers arrived late at night, at a time when they could reasonably believe that appellant would be present. At that time, they discovered no new information undermining the belief that appellant could be found at home. *Cf. Government of Virgin Islands v. Gereau*, 502 F.2d 914, 929 (3rd Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975) (facts establishing exigent circumstances justifying entry and search without consent or warrant may be negated by information obtained upon arrival at premises). Thus, the officers' information would reasonably support a belief that appellant was at home at the time of the entry. *See United States v. Campbell, supra* (home entered four hours after commission of crime); *Dorman v. United States*, 140 U.S.App.D.C. 315, 435 F.2d 385 (1970) (en banc) (no warrant; home entered at 10 P.M., four hours after commission of crime); *United States v. Woods, supra* (home entered at 8:30 A.M. and police believed suspect was not working); *Defino Martone v. United States*, 396 F.2d 229 (1st Cir. 1968) (entry of home at 6 A.M.); *People v. Stibal, supra* (police entered home at 3:30 P.M. after observing suspect's car in driveway).[3]

**3.** Many cases indicate that the requirement of probable cause to believe the suspect is at home is satisfied when the police arrive at a residence they reasonably believe is that of the suspect. *See Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978) (plurality opinion) (dictum); *Vance v. North Carolina*, 432 F.2d 984 (4th Cir. 1970); *State v. Jones*, 274 N.W.2d 273 (Iowa 1979); *People v. Pay-*

There also existed probable cause to search appellant's home to execute the arrest warrant. In addition to the information available when the magistrate issued the warrant, the officers observed suspicious conduct indicating that appellant was home. Appellant's mother was upstairs for five to ten minutes, more time, a reasonable officer could have concluded, than necessary for the simple task of verifying appellant's presence or absence. During that time, the officers heard sounds and saw shadows suggesting movement upstairs. Upon all the information available, the officers possessed probable cause to believe that appellant was home and avoiding arrest. In those circumstances, they need not have believed the mother's declaration that appellant was not home. *State v. Hiralez,* 27 Ariz.App. 393, 555 P.2d 363 (1976).[4]

In summary, we find that the arresting officers had probable cause to believe that appellant was at home, could enter and search his home to execute a valid arrest warrant and conducted a proper search for appellant.[5]

Judgments of sentence affirmed.

*ton,* 45 N.Y.2d 300, 408 N.Y.S.2d 395, 380 N.E.2d 224 (1978) (no warrant). We need not decide this issue.

**4.** Nor did the search itself violate constitutional strictures. The police did not use the search as a pretext to uncover incriminating evidence or otherwise extend it beyond what was necessary to locate appellant. *United States v. Woods,* 560 F.2d 660 (5th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978); *United States v. Cravero,* 545 F.2d 406 (5th Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), *reh. denied,* 431 U.S. 960, 97 S.Ct. 2689, 53 L.Ed.2d 279 (1977); *People v. Stibal,* 56 Ill.App.3d 385, 20 Ill.Dec. 652, 372 N.E.2d 931 (1978); *cf. Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to arrest); *Commonwealth v. Bess,* 476 Pa. 364, 382 A.2d 1212 (1978) (same). Of necessity, they looked in places out of plain view where appellant could be hiding. They were properly searching for appellant when they discovered him in a closet. *See Dorman v. United States,* 140 U.S.App.D.C. 315, 435 F.2d 385 (1970) (search behind sofas and in closets); *Zempel v. State,* 554 P.2d 1209 (Okl.Cr.App. 1976) (defendant discovered in closet); *State v. Jones, supra* (same). The search then immediately halted.

**5.** On the facts of this case, we need not resolve a host of related questions: 1) Whether appellant's mother could and did consent to

entry of the home, *see Commonwealth v. Hrynkow*, 457 Pa. 529, 330 A.2d 858 (1974); *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3rd Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); 2) Whether, if the mother did consent to entry, that consent included permission to search for appellant; 3) Whether existence of probable cause to enter, in itself, is sufficient to establish probable cause to search, *see Dorman v. United States, supra; United States v. Woods, supra; People v. Stibal, supra*; 4) Whether evidence discovered during a search for a suspect may be used against him at trial, *see Dorman v. United States, supra*; 5) Whether the police, in addition to searching for appellant, would have been entitled to search for weapons or to ensure that no other dangerous individuals were on the premises, *see Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1647, 18 L.Ed.2d 782 (1967); 6) Whether the arrest warrant would have authorized entry and search of premises other than appellant's home, *see United States v. Cravero, supra* (home of third party); *United States v. Brown*, 151 U.S.App.D.C. 365, 467 F.2d 419 (1972) (any premises; dictum); *State v. Jones, supra* (shared home); *State v. Collett*, 542 S.W.2d 783 (Mo.1976) (motel room); 7) If a search of other premises is permissible, the degree of probable cause required to believe that the suspect is there; and 8) Whether entry and search of a suspect's home is permissible when officers lack an arrest warrant. *See, e. g., United States v. Campbell*, 581 F.2d 22 (2d Cir. 1978).