446 A.2d 583

**COMMONWEALTH of Pennsylvania**

v.

**Paul STANLEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 19, 1982.

Decided June 1, 1982.

John W. Packel, Chief, Appeals Div., Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Gaele McLaughlin Barthold, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

LARSEN, Justice.

■ This case presents several issues: (1) whether appellant's Fourth Amendment rights were violated when police (armed with an arrest warrant) entered a third-party's apartment, arrested appellant, and seized his revolver; (2) whether appellant's Fourth Amendment rights were violated when the police failed to announce their purpose prior to breaking into the apartment; (3) whether appellant violated 18 Pa.C.S.A. § 907(a) (possessing instruments of crime) by openly carrying a loaded revolver; (4) whether, despite appellant's offer to stipulate that he committed a "crime of

violence," appellant's prior murder conviction was admissible to prove that he violated 18 Pa.C.S.A. § 6105, which prohibits individuals convicted of a "crime of violence" from possessing firearms; and (5) whether appellant could assert intolerable prison conditions as a defense to the crime of escape.[1]

On October 1, 1975, while incarcerated following a murder conviction[2] for the shooting death of one Timothy Shinn, appellant escaped from the Philadelphia General Hospital Detention Unit. When police discovered appellant was gone, they broadcast an hourly "wanted" message over the police radio, informed the State Crime Information Center, and widely disseminated appellant's "mug shot". An arrest warrant was issued the next day.

While appellant was at large, Carmen Sperduto observed appellant with Jacqueline Keim. Ms. Keim told Mr. Sperduto that appellant was a fugitive and was staying at her apartment on West Roosevelt Boulevard in Philadelphia. (Appellant was heard to say that "he needed a place to hole up . . . until things got cooled off.") Mr. Sperduto also observed appellant drop and retrieve a small caliber revolver. On October 3, after seeing appellant's picture in the paper, Mr. Sperduto called the police and stated that he "might know" appellant's whereabouts.

About an hour later, Mr. Sperduto conducted the police to Ms. Keim's apartment. The police called for reinforcements, but no search warrant was obtained. When reinforcements arrived, an officer knocked and announced "Police". Thirty to sixty seconds elapsed with no response. The police then

1. Appellant also claims that the arrest warrant was invalid and that the Information in which he was charged with violating 18 Pa.C.S.A. § 6105 had improperly been amended prior to trial. These claims were not raised in appellant's petition for allowance of appeal, hence waived. Pa.R.A.P. 1115(a)(3); *Commonwealth v. Drake*, 489 Pa. 541, 414 A.2d 1023 (1980); *Abramson v. Commonwealth, Public Utility Commission*, 489 Pa. 267, 270 n.5, 414 A.2d 60, 62 n.5 (1980).

2. This conviction was subsequently (1979) reversed and a new trial was granted. *See Commonwealth v. Stanley*, 484 Pa. 2, 398 A.2d 631 (1979).

forced open the door and proceeded through the living room and dining room. In a small back bedroom, the police observed what they first thought to be a bundle of clothing beneath a small portable crib. Upon closer examination, the police discerned the figure of a man (appellant) and apprehended the appellant. Simultaneously, the police seized a fully loaded revolver from the top of a small bureau next to the crib, within appellant's reach.

Appellant's motion to suppress this revolver was denied, and the revolver was admitted into evidence at appellant's trial. A jury convicted appellant of escape offenses, possessing an instrument of crime, and possessing a prohibited offensive weapon. [18 Pa.C.S.A. §§ 5721, 5722, 907(a), 908]. Appellant, however, was acquitted of possessing a firearm prohibited to an individual convicted of a "crime of violence." [18 Pa.C.S.A. § 6105]. Appellant was sentenced to two and one-half to nine years imprisonment, the Superior Court affirmed, and we granted allocatur.

First, appellant claims that the revolver should have been suppressed because the police entered Ms. Keim's apartment without a search warrant or probable cause to believe that appellant was inside the apartment.[3] Appellant's claim simply misapprehends the situation. Appellant's revolver was taken from the bureau, an area in his immediate control, incident to a lawful arrest, a constitutionally permissible seizure. It is fundamental that areas within a suspect's immediate control may be searched incident to a lawful arrest to prevent danger to the arresting officers and to prevent destruction of evidence. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *reh. den.*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969); *Commonwealth v. Bess*, 476 Pa. 364, 382 A.2d 1212 (1978). The revolver was the "fruit" of a lawful arrest, not the "fruit" of a search of the apartment. *See United States v.*

**3.** The Superior Court also concluded that since the purpose of the police entry into Ms. Keim's apartment was to effect appellant's arrest, not to search the apartment, appellant had no standing to object to the intrusion. *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166 (1979).

*Cravero*, 545 F.2d 406 (5th Cir. 1976), *cert. den.*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977); *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979) (concurring opinion by Nix, J.); *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166 (1979); *Commonwealth v. Terebieniec*, 268 Pa.Super. 511, 525 n.4, 408 A.2d 1120, 1127 n.4 (1979). Probable cause to search the apartment or a warrant to search the apartment were wholly unnecessary.

■■■ There is yet another reason why appellant's claim fails. A valid arrest warrant and mere "reason to believe" that appellant was within was all that the police needed to enter. More stringent requirements—a search warrant or probable cause—were wholly unnecessary. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (police armed with an arrest warrant and "reason to believe" that a suspect is within can enter a suspect's own home and seize evidence in plain view); *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. den.*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).[4] The police, relying on Mr. Sperduto's information, had "reason to believe" that appellant was in Ms. Keim's apartment. The *Payton v. New York* and *Commonwealth v. Williams* cases, which apply to searches of a suspect's own home, also govern appellant's case. Fourth Amendment claims involve the accused's "legitimate expectation of privacy" in the areas searched. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58

4. *Commonwealth v. Shaw*, 476 Pa. 543, 383 A.2d 496 (1978), which held that absent exigent circumstances, police must have probable cause to enter a suspect's own home to effect a *warrantless* arrest, is inapplicable to this case. Appellant was the subject of a valid arrest warrant. Moreover, appellant mistakenly relies on *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), which determined that absent exigent circumstances, police need a search warrant to enter premises belonging to a third party, even though police had a valid warrant to arrest a suspect. The *Steagald* case involved the Fourth Amendment rights of the third party owner (whose cocaine was seized) and expressly did not adjudicate the rights of the suspect (who was not even found.) *Id.* at 219–220, 101 S.Ct. at 1651. At any rate, it would be anomalous to interpret *Steagald v. United States* to afford appellant more rights in Ms. Keim's apartment than he would have in his own home under *Payton v. New York*.

L.Ed.2d 387 (1978); *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979). If an arrest warrant and "reason to believe" that a suspect can be found on the premises are sufficient for police to invade a suspect's own home, then these facts are sufficient to invade a third party's premises, where a suspect's expectation of privacy is necessarily less.

 Second, appellant claims that the revolver should have been suppressed because the police failed to announce their purpose prior to entering. Generally, absent exigent circumstances, police must announce both their authority and purpose before forcible entry. *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968). In this case, the police knocked and announced "Police," but failed to announce their purpose before breaking in thirty to sixty seconds later. However, all Fourth Amendment requirements are tempered by considerations of reasonableness under the circumstances. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The purpose of the "knock and announce" requirement is to permit peaceful surrender of the premises before forcible intrusion. *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971). After the police knocked and announced their identity, and there was *absolutely no response* for up to one minute, peaceful surrender of the premises could not reasonably have been anticipated, and communication of purpose was unnecessary. Cf. *Commonwealth v. Fladger*, 263 Pa.Super. 538, 398 A.2d 707 (1979). The Fourth Amendment does not require that the police stand in a corridor talking to a door. The police need not engage in a "futile gesture" when the occupants of the premises remain silent. See *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975), *allocatur denied.*

 Furthermore, it was unnecessary for the police to announce their purpose because of the exigent circumstances which were present, *i.e.*, potential harm and peril to the safety of the police. See *Commonwealth v. Johnson*, 223 Pa.Super. 83, 289 A.2d 733 (1972); *Commonwealth v. Timko*, 491 Pa. 32, 417 A.2d 620 (1980) (Larsen, J. dissenting opin-

ion); *United States v. Kane*, 637 F.2d 974 (3d Cir. 1981). The Fourth Amendment cannot be interpreted to imperil law enforcement officers. Appellant, who was reported to be armed, had escaped from imprisonment for the crime of murder committed with a firearm. Under these circumstances, by announcing their identity and waiting at all, the police did more than was required by the Fourth Amendment. Rather than cowering beneath a crib, appellant may have been preparing an ambush. Consequently, to have delayed any further would have been risky and foolhardy on the part of the police. The revolver seized during appellant's arrest was properly admitted into evidence.

Third, appellant contends that his possession of the loaded revolver did not violate 18 Pa.C.S.A. § 907 (Possessing Instruments of Crime).[5] Appellant's contention is meritless. This Court must construe the words of a statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a) (Statutory Construction Act of 1972); *Commonwealth v. Mumma*, 489 Pa. 547, 414 A.2d 1026 (1980). Appellant was convicted of violating Section 907 of the Crimes Code, which plainly provides:

(a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

. . . .

An "Instrument of Crime" is defined to include:

[A]nything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Appellant possessed a loaded revolver when he was arrested for the crime of escape; appellant clearly possessed an

5. Arguing from legislative history, appellant maintains that part (a) and part (b) of Section 907 are mutually exclusive with regard to firearms: that Section 907(b) prohibits the possession of concealed weapons, *expressly including firearms*, and that Section 907(a) prohibits possession of all other instruments of crime, *implicitly excluding firearms*. Appellant concludes that his non-concealed, open possession of the revolver violated neither Section 907(a) or Section 907(b), hence was perfectly legal.

"instrument of crime", under Section 907(a). *See Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980), *Commonwealth v. Harley*, 275 Super.Ct. 407, 418 A.2d 1354 (Special Transfer Docket, 1980); *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39 (1975), *aff'd mem.*, 478 Pa. 19, 385 A.2d 975 (1978).

Fourth, appellant contends that his prior murder conviction which resulted from the shooting death of Timothy Shinn was improperly and prejudicially admitted into evidence at trial to prove that he violated 18 Pa.C.S.A. § 6105 which prohibits an individual convicted of a "crime of violence" from possessing firearms. Appellant offered to stipulate that he committed a "crime of violence",. but the prosecutor refused to accept the stipulation. Instead, the prosecutor was permitted to call a prison-records custodian and an assistant district attorney who testified that appellant was convicted of first degree murder on May 28, 1975. Absolutely no reference was made to the facts underlying the 1975 conviction. Nevertheless appellant contends that in light of his offer to stipulate to a "crime of violence", actual mention of the murder conviction was unduly prejudicial. This contention is meritless.

The Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. § 6102 defines "crime of violence" to include:

Any of the following crimes, or an attempt to commit any of the same, namely: murder, rape, aggravated assault, robbery, burglary, entering a building with intent to commit a crime therein, and kidnapping.

Hence, appellant's murder conviction was undisputedly material and relevant to proving that he committed a "crime of violence." As such, it was "proper" evidence, squarely within *Commonwealth v. Evans*, 465 Pa. 12, 348 A.2d 92 (1975) which held that the Commonwealth may use any "proper" evidence to prove its case, and *does not have to accept* the accused's stipulations. *See United States v. Williams*, 612 F.2d 735 (3d Cir. 1979), *cert. den.*, 445 U.S. 934, 100 S.Ct.

1328, 63 L.Ed.2d 770 (1980). Of interest, appellant was acquitted of this charge of violating Section 6105.[6]

Fifth, appellant contends that the court should have permitted him to introduce into evidence alleged facts that prison conditions were intolerable, in order to establish a defense to escape and possessing instruments of escape. [18 Pa.C.S.A. §§ 5121, 5122]. Specifically, appellant alleges that he suffered severe bodily and mental injury due to lack of medical care and overcrowding. We find appellant's contention to be meritless.[7]

The "escape" section of the Crimes Code specifically forcloses certain defenses:

> § 5121. Escape . . . .
>
> (c) Effect of legal irregularity in detention.—Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under this section.

Claims of overcrowding and poor medical attention pertain to "irregularity in . . . maintaining detention" and the court

**6.** Appellant also contends that he should receive a new trial because reference was made to his 1975 murder conviction and that conviction was reversed and a new trial granted in 1979, which was subsequent to the within trial. Appellant relies on *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (use of prior, unconstitutional conviction for impeachment purposes required grant of a new trial) and *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (use of prior, unconstitutional conviction to enhance punishment under recidivist statute required reversal). These two cases are readily distinguishable from the within matter. Appellant's murder conviction was not used to impeach or to enhance sentence, or any other collateral matter, but was used to prove an essential element of the offense charged. Despite the fact that the murder conviction was subsequently reversed, appellant was an individual convicted of a "crime of violence" at the time he was charged with possessing the firearm.

**7.** Nothing in this opinion, however, should be interpreted as lessening our power or commitment to remedying "cruel and unusual", unconstitutional prison conditions. *See Jackson v. Hendrick*, 457 Pa. 405, 321 A.2d 603 (1974). In fact, over and above remedying cruel conditions, the legal profession has an obligation to work toward more humane prison conditions. *See* Chief Justice Warren E. Burger, *Annual Report to the American Bar Association by the Chief Justice of the United States*, 67 A.B.A.J. 290 (1981).

below properly refused to entertain them. *See Commonwealth v. Nardi*, 185 Pa.Super. 136, 138 A.2d 140 (1958), *allocatur denied* (illegal detention of minor in wrong institution not a defense to escape). The policy behind this statute is sound: self-help remedies which jeopardize the safety of citizens of this Commonwealth, the safety of prison officials, and the orderly administration of prisons cannot be condoned. Moreover, the remedies of habeas corpus [*Commonwealth el rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971)] and civil rights actions under 42 U.S.C. § 1983 [*Fox v. Sullivan*, 539 F.2d 1065 (5th Cir. 1976)], are available to prisoners protesting prison conditions.

Appellant, however, would have us construe the alleged intolerable prison conditions as a form of the "duress" defense, defined at 18 Pa.C.S.A. § 309:

> (a) General rule.—It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

We reject appellant's contention, simply because the alleged overcrowding and poor medical care do not constitute "force against [appellant's] person". Other jurisdictions which have recognized escape defenses have done so in cases which involve immediate threats of serious bodily injury, death, or forcible sexual attack. *See People v. Lovercamp*, 43 Cal. App.3d 823, 118 Cal.Rptr. 110 (1974). None of those factors are present in this case.

If this Court were to recognize poor prison conditions as a defense to escape, a simple escape trial would turn into a sweeping trial of the prison system itself. Scarce judicial resources would be squandered to consider the testimony of an endless succession of disgruntled inmates. *See United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

Additionally, a prerequisite to asserting the defense of intolerable prison conditions is voluntary return to custody as soon as the "duress" has ended. *United States v. Bailey, supra; Commonwealth v. Clark*, 287 Pa.Super. 13, 429 A.2d 695 (1981). The alleged "duress" of intolerable conditions ceased while appellant was at large, yet he failed to return to custody voluntarily. The trial court correctly refused to consider his "intolerable conditions" defense.

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion in which FLAH-ERTY, J., joined.

O'BRIEN, C. J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

Although I believe that on this record appellant is not entitled to relief, I reach this result on grounds different from those relied on in the majority opinion of Mr. Justice Larsen.

*Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the most recent decision of the Supreme Court of the United States in the Fourth Amendment area, holds that absent exigent circumstances or consent, the police may not lawfully search "for the subject of an arrest warrant in the home of a third party without obtaining a search warrant." Id. at ——, 101 S.Ct. at 1644. That holding, which as a matter of federal constitutional law is binding upon this Court, compels the conclusion that the police should have obtained a search warrant prior to entering the apartment of Jackie Keim to arrest appellant. Thus the opinion of Mr. Justice Larsen errs in stating that "a search warrant or probable cause [was] wholly unnecessary."

However, notwithstanding the fact that a search warrant should have been obtained to arrest appellant in a third party's home, the absence of a search warrant has not infringed upon appellant's Fourth Amendment right to be

free from unreasonable searches and seizures. As the Supreme Court recognized in *Steagald*, the purpose of requiring police to obtain a search warrant prior to executing an arrest warrant in the home of a person other than the suspect is to protect the third party's legitimate expectation of privacy in his home. On this record I am convinced that appellant cannot assert an infringement of that privacy. See *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Appellant's legitimate expectation to be free from unreasonable searches and seizures was protected by police compliance with *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978). Prior to entering the apartment to arrest appellant, the police had ample reason to believe that appellant was within and they had obtained the issuance of an arrest warrant from a magistrate upon a showing of probable cause to believe that appellant had committed an offense. Thus, appellant has not established that the absence of a search warrant violated his Fourth Amendment rights and his claim for relief on this basis must be denied. See Remarks of Professor Kamisar at the Third Annual Supreme Court Review and Constitutional Law Symposium, reprinted in The Supreme Court: Trends and Developments 1980–81, at 121–27 (1982) (search warrant required to search third party's home for suspect, but absence of search warrant not properly asserted by suspect whose "expectation of privacy" in his host's home is legally insufficient); Harbaugh & Faust, *"Knock on Any Door"— Home Arrests After Payton and Steagald*, 86 Dick.L.Rev. 191, 236 (1982) ("non-resident suspect present in the home of another person does not have the right to challenge the absence of a search warrant").

I also note my disagreement with the opinion of Mr. Justice Larsen in its evaluation of appellant's claim that the

police unconstitutionally failed to announce their purpose. Although I am satisfied that the police conduct in executing the arrest warrant was reasonable in the circumstances, I cannot agree with the opinion's observation that "by announcing their identity and waiting at all, the police did more than was required by the Fourth Amendment." Where, as here, the police seek to execute an arrest warrant in the home of a third party who has not consented to entry by the police, the police must at the very least announce their identity. See generally *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. DeMichel,* 442 Pa. 553, 227 A.2d 159 (1971); *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795 (1968).

For the above reasons, I concur only in the result.

FLAHERTY, J., joins in this concurring opinion.

O'BRIEN, Chief Justice, dissenting.

While I agree with Mr. Justice Roberts' analysis concerning *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), I must disagree with both him and the majority that the police conduct in executing the arrest warrant was reasonable. I believe the case law of this Commonwealth, as fully set forth in my dissenting opinion in *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982), mandates that police announce both their identity and purpose prior to executing a forcible entry. The rationale for the knock and announce rule, which is to reduce the potential for violent confrontations between officers and occupants and to guard against needless destruction of private property, is no less viable merely because the premises belong to another party.

I would suppress the arrest and all evidence derived therefrom, and reverse for a new trial.