## Commonwealth ex rel. *v.* Archbald.

*Equity—Equity practice—Equity rules—Appointment of master to state account.*

The office of master, though "discontinued" with reference to its general use in the practice existing before the new equity rules went into effect, was not abolished. It is still continued "in proceedings where decrees for interlocutory orders are to be executed."

A decree for an account is an interlocutory order, and the court may appoint a master to execute it.

Whether the court shall call in an accountant to sit with it as an assessor in stating the account, or shall refer the matter to a master sitting separately, is a matter which must be left largely to the discretion of the court itself, which has the facts before it.

Whether the person to whom the case is sent be called an assessor, an auditor, a referee or a master is of no importance, the substance of the matter is the right of the court in exceptional cases to avail itself of exceptional assistance, in executing or supervising the execution of the details of its work, not requiring the exercise of exclusively judicial functions. Per MITCHELL J.,

Petition for mandamus to be directed to the judges of the court of common pleas of Lackawanna county. S. C. Miscellaneous Docket No. 1, No. 381.

Petitioner filed a bill in the common pleas against one Jenkins for an account and settlement, as plaintiff's agent. On hearing before Judge GUNSTER a decree was made in favor of plaintiff, and subsequently, during the last illness and shortly before the death of Judge GUNSTER, the other judges referred

the matter to a master to state the account. Thereupon plaintiff moved the court to revoke the order as improvidently made and to proceed to take the account in open court. This being refused plaintiff filed the present petition for a mandamus directing the judges to hear and determine the account themselves.

*A. Ricketts*, for the petition.

OPINION BY MR. JUSTICE MITCHELL, April 9, 1900 :

This application is founded on that portion of the amended equity rules adopted in 1894 (see 159 Pa. 25), which provides that " the office of master in chancery is hereby discontinued, except in proceedings where decrees or interlocutory orders are to be executed, or their execution supervised by an officer of the court."

The object of the revision of the equity rules was to lessen the delay and expense of the proceedings, and in furtherance of the principle which is the proudest feature in the history of Pennsylvania jurisprudence that equity is part of the common law of the state, to assimilate as closely as may be, the practical administration of justice in the two forms of procedure. The application of equitable principles through common-law forms, ingenious as were the ways devised by our predecessors at the bar and on the bench, had its limits, and as the community grew denser in population and more complex in its business relations, the need not only of equitable principles but also of the distinctly equitable remedies became manifest, and was supplied by legislation. But equity in this separate form is of very modern growth in this state. There are practitioners still living who can remember its beginnings. The hand which had the largest share in shaping its practical application was that of Judge EDWARD KING of the common pleas of Philadelphia who left the bench only a few years before I began the study of the law, and whom I had the honor of knowing in his later life. Partly from want of previous familiarity with their exact limits, and partly no doubt from the convenience of the practice in the crowded state of the dockets of the courts in which bills were most frequently filed, notably in the nisi prius branch of this court, the new and useful instrumentalities of equity were not infrequently applied to matters not within their province

by the established practice of the English chancery. This was especially the case with regard to masterships. By insensible degrees the office of master outgrew its position as a mere executive or administrative arm of the court, and usurped or had imposed upon it, functions which were strictly judicial. This state was not alone in its experience in this regard. "It is not competent for a court of chancery on its own motion or upon the request of one party to abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers:" Beach on Modern Equity Practice, sec. 673, citing Kimberly v. Arms, 129 U. S. 512.

It was to obviate this tendency among other reasons, that the present rules were adopted by this court. But the office of master though "discontinued" with reference to its general use in the then existing practice was not abolished. It is a necessary part of the equipment of a court of chancery, extending back at least to the time of Edward the third: Bennet, The Master's Office in the Court of Chancery, p. 1. By our rule, it is still continued "in proceedings where decrees or interlocutory orders are to be executed." The decree for an account is so completely interlocutory that until the Act of June 24, 1895, P. L. 243, no appeal would lie from it even where the liability to account was the main issue. After the court has decreed an account, the stating of it was usually referred to a master. "References to the master are of various kinds, such as matters of account between parties to a suit; . . . . to marshal assets," etc.: Bennet, supra, p. 4. "If the chancellor be satisfied that the complainant is entitled to an account, the practice is to refer it to a master to state the details of the account, and ascertain the balance:" Beach, Practice in Equity, sec. 680.

Even by the letter of our rules, therefore, the office of master still continues in relation to the stating of an account, after it has been ordered by the interlocutory decree of the court. Undoubtedly the spirit of the rule is that in ordinary cases the court should settle the account as part of the adjudication of the whole case, but exceptional cases may require exceptional treatment, and this is specifically provided for by the rule in relation to accounts, 159 Pa. 26, that "in cases involving complicated accounts, or questions requiring the aid of experts, if the parties do not refer, the court may call in the aid of an ac-

countant or other expert as an assessor." Whether the court shall call in an accountant to sit with it as an assessor in stating the account, or shall refer the matter to a master sitting separately, is a matter which must be left largely to the discretion of the court itself which has the facts before it. In the case of Mandamus to the Chester County Judges, 193 Pa. 251, the reference to a master of a very complicated and voluminous matter of distribution, was sustained by this court. Whether the person to whom the case is sent be called an assessor, an auditor, a referee or a master is of no importance, the substance of the matter is the right of the court in exceptional cases to avail itself of exceptional assistance, in executing or supervising the execution of the details of its work, not requiring the exercise of exclusively judicial functions. It has not been shown that the court below exceeded its discretionary powers in this respect.

Petition dismissed.