Jackson et al., Appellants, *v.* Hendrick.

Argued April 26, 1974.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David Rudovsky*, with him *Bruce E. Endy, David Kairys, Kairys & Rudovsky,* and *Community Legal Services, Inc.,* for appellants.

*John Mattioni,* Deputy City Solicitor, with him *Nicholas Panarella, Jr.* and *James M. Penny, Jr.,* Assistant City Solicitors, and *Martin Weinberg,* City Solicitor, for appellees.

*Mercer D. Tate* and *Gratz, Tate, Spiegel, Ervin & Ruthrauff,* for Philadelphia Bar Association, amicus curiae.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1974:

Appellants, on behalf of themselves and all others confined in Philadelphia prisons, commenced this action seeking equitable relief from the allegedly unconstitutional conditions existing in the Philadelphia prison system. After taking extensive testimony, a special three-judge court found that confinement in Philadelphia prisons constituted cruel and unusual punishment. The court made findings of fact, conclusions of law, and entered a decree nisi. After appellees' exceptions were overruled, the decree was made final.

Appeal to the Commonwealth Court[1] resulted in affirmance of the trial court's decree "except that portion providing for the appointment of a master, which por-

---

[1] See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. IV, § 402(4), 17 P.S. § 211.402(4) (Supp. 1974).

tion [was] reversed." *Hendrick v. Jackson*, 10 Pa. Commonwealth Ct. 392, 403, 309 A.2d 187, 192-93 (1973). We granted appellants' petition for allowance of appeal to determine whether the trial court abused its discretion in appointing the master.[2] We modify the order of the Commonwealth Court by reinstating the trial court's decree in its entirety.

The question before us is whether after entering a final decree and retaining jurisdiction, a court of equity may appoint a master as an administrative aid to assist the court and the parties in preparing and implementing a plan to eliminate unconstitutional conditions of confinement. Appellants contend that the Commonwealth Court erroneously found such an appointment violative of Pennsylvania Rules of Civil Procedure 1514 and 1515.[3] We agree.

---

[2] See id. art. II, § 204(a), 17 P.S. § 211.204(a) (Supp. 1974).

[3] Rule 1514 states: "Except as otherwise provided by Act of Assembly or rule of the Supreme Court, no examiner, master or auditor shall be appointed."

Rule 1515 permits the court, in appropriate cases, to avail itself of the assistance of experts.

"In action[s] involving complicated accounts, or questions requiring the evidence of experts, the court may employ an accountant or other expert to aid in the proper disposition of the action. The report or evidence of such accountant or other expert shall be available to any party and he shall be subject to examination or cross-examination by any party. He shall be paid reasonable compensation for his services."

Of course, the title given the person chosen to assist the court is immaterial. Whether he be called master, auditor, referee, or umpire, it is the substance of the court's assignment rather than the name which determines whether rule 1514 has been violated. *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 42, 209 A.2d 375, 378 (1964); *Rowley v. Rowley*, 294 Pa. 535, 540-41, 144 A. 537, 539 (1928); *Commonwealth ex rel. v. Archbald*, 195 Pa. 317, 320, 46 A. 5, 6 (1900).

Furthermore, when interpreting our rules of civil procedure, we are guided by the imperative of Rule 126.

In 1894 this Court by rule discontinued the office of master in chancery.[4] "By insensible degrees the office of master outgrew its position as a mere executive or administrative arm of the court, and usurped or had imposed upon it, functions which were strictly judicial." *Commonwealth ex rel. v. Archbald,* 195 Pa. 317, 319, 46 A. 5, 5 (1900). Masters had been "appointed to take testimony, make findings of fact and law, and report decrees for consideration by the chancellor." *Rowley v. Rowley,* 294 Pa. 535, 539, 144 A. 537, 539 (1928). Although discontinued, the office of master was not abolished for it was viewed as "a necessary part of the equipment of a court of chancery." *Commonwealth ex rel. v. Archbald,* supra at 319, 46 A. at 6.

It is clear that the rather strict limitations imposed upon the power of a court of equity to appoint a master were aimed at the practice of delegating exclusively judicial functions to nonjudicial officers. *Arcadia Theatre Co. v. Sablosky,* 418 Pa. 34, 47, 209 A.2d 375, 381 (1964); *Houghten v. Restland Memorial Park, Inc.,* 343 Pa. 625, 629, 23 A.2d 497, 500 (1942); *Yetter v. Delaware Valley R.R.,* 206 Pa. 485, 487, 56 A. 57, 57 (1903). In *Arcadia,* this Court approved appointment of a master to supervise a meeting of shareholders and a corpo-

---

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

[4] See Amendments to the Equity Rules, 159 Pa. xxiv (1894). See also *Commonwealth ex rel. v. Archbald,* 195 Pa. 317, 318, 46 A. 5, 5 (1900).

The equity rules were again revised in 1925 when Rules 15 and 65 were adopted. See *Darlington v. Reilly No. 1,* 375 Pa. 578, 580-81, 101 A.2d 900, 901 (1954). In 1952 Equity Rules 15 and 65 were replaced by the substantially identical Rules 1514 and 1515. See Order Adopting Rules of Civil Procedure Governing The Action in Equity, 369 Pa. xxvii, xxxvii (1952).

rate election. We concluded that because the chancellor made all factual and legal determinations and left to the master only the conduct of the shareholders' meeting, the appointment was within the chancellor's discretion.

"It is necessary in some equitable actions for the court to avail itself of persons who can see to the performance of certain duties, either defined and outlined by the court, or by agreement of the parties and approved by the court, just so long as those duties are not judicial." 418 Pa. at 47, 209 A.2d at 381.

In *Houghten* and *Yetter,* on the other hand, we found that our rules had been violated when the chancellor delegated his factfinding function to a master. *Houghten v. Restland Memorial Park, Inc.,* supra at 629, 23 A.2d at 500; *Yetter v. Delaware Valley R.R.,* supra at 487, 56 A. at 57. The *Houghten* master, appointed to liquidate the assets of a failing business, filed a report which was marked "confirmed nisi." The chancellor did nothing more than pass on exceptions to the master's report. 343 Pa. at 629, 23 A.2d at 500. The chancellor in *Yetter* delegated to a master the task of determining who could vote at a stockholders' meeting. The court, however, made no findings either of fact or law and entered no decree before appointing the master. This Court commented that the chancellor had "exercised no judicial function whatever, except to appoint [the master]." 206 Pa. at 487, 56 A. at 57.[5]

What we must determine is whether the functions assigned to the master by the trial court are exclusively judicial.[6] If they are, the master's performance of those

---

[5] Compare *Arcadia Theatre Co. v. Sablosky,* 418 Pa. 34, 209 A.2d 375 (1964). See also *Darlington v. Reilly No. 1,* 375 Pa. 578, 101 A.2d 900 (1954); *Buse & Caldwell Dissolution Case,* 328 Pa. 211, 195 A. 9 (1937).

[6] The Commonwealth Court thought that "the dominant issue is the extent to which a master by reason of his assigned duties and

functions is barred by Rule 1514. If the duties assigned to the master are nonjudicial, our rules do not deny a court of equity the right to avail itself of the assistance of a master.[7]

In the instant case, six days of testimony produced a complicated and prolix record. Upon exhaustively analyzing the evidence, the court made seventy-four detailed findings of fact and numerous conclusions of law. Because of the complexity of the case before it, the court properly concluded that fashioning appropriate relief would require a detailed study of the available alternatives.

"Apart from the extraordinary nature of the problems presented by the record, it would be 'manifestly impossible' for the Court to anticipate and to appraise all of the factors requiring consideration in administering the prisons, and to draft rules accordingly. This is not the function of the Court but of the prison officials, and through the master, who will serve as an organizer and a conduit, the fruits of their labor will be brought to the Court for its approbation." *Jackson v. Hendrick,* No. 71-2437, February Term, 1971, at 253 (Pa. C.P.

responsibilities will participate in the case." *Hendrick v. Jackson,* 10 Pa. Commonwealth Ct. 392, 400, 309 A.2d 187, 191 (1973). We see no impediment in Rules 1514 or 1515 to a master's participation in an equity case no matter how extensive so long as his duties as defined by the court are nonjudicial.

It is interesting to note that the Commonwealth Court has recently appointed an "expert" to examine the proposed desegregation plan submitted by the Philadelphia School District. The expert is directed to examine the plan, consult with the parties, and prepare a report on how to modify the proposed plan. *Pennsylvania Human Relations Comm'n v. School Dist. of Philadelphia,* No. 1056, C.D. 1973 (Pa. Commonwealth Ct., filed June 4, 1974).

[7] "But the office of master though 'discontinued' . . . was not abolished [by the 1894 equity rule]. It is a necessary part of the equipment of a court of chancery, extending back at least to the time of Edward the third . . . ." *Commonwealth ex rel. v. Archbald,* 195 Pa. 317, 319, 46 A. 5, 6 (1900).

Phila., filed April 7, 1972). The court therefore retained jurisdiction, appointed the master, and ordered the parties, with the master's help, to devise and submit to the court a plan to remedy conditions in the Philadelphia prisons.

Once conditions of confinement have been found unconstitutional, a court of equity has broad discretion to decide what relief should be granted.[8] It may direct the prison authorities to prepare a plan to eliminate the constitutionally-objectionable conditions, see *United States v. Alsbrook,* 336 F. Supp. 973, 981 (D.D.C. 1971); *Holt v. Sarver,* 309 F. Supp. 362, 385 (E.D. Ark. 1970), aff'd, 442 F.2d 304 (8th Cir. 1971), or the court may simply order the parties to prepare for a conference at which a decree will be framed. *Rhem v. Malcolm,* 371 F. Supp. 594, 636 (S.D.N.Y. 1974). Alternatively, the court may itself, without submission of any plan or comments, grant mandatory or injunctive relief. *Landman v. Royster,* 333 F. Supp. 621, 657 (E.D. Va. 1971); *Jones v. Wittenberg,* 330 F. Supp. 707, 714-22 (N.D. Ohio 1971), aff'd sub nom., *Jones v. Metzger,* 456 F.2d 854 (6th Cir. 1972).

Here the court decided that the most efficient method of arriving at a remedy was for the parties together with the master to explore all the alternatives and then report to the court. The parties and the master were instructed that the court's findings of fact should be used as a checklist in determining what the plan should include.

---

[8] "Equitable remedies . . . are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." 1 J. Pomeroy, Treatise on Equity Jurisprudence § 109, at 141 (5th ed. S. Symons 1941). See *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971).

We discern no function assigned to the master which could be characterized as exclusively judicial. Cognizant of the complex nature of the problem and the need for speedy action to correct it, the court provided for appointment of a master. The duty of the master, as envisioned by the court, was to act as a mediator and reporter—not as a judge.

No support has been found in the trial court's opinion for appellees' assertion that the master will attempt to act as administrator of the Philadelphia prison system. Neither is the master authorized to take testimony and make findings of fact. What the master is charged with is "the formidable task of collecting and compiling all relevant data, and, thereafter with all of the parties, formulating recommendations to the Court responsive to the record and the Court's Findings of Fact."[9] We conclude that appointment of a master in the role envisioned by the trial court is completely consistent with Rules 1514 and 1515.[10] See *Arcadia Theatre Co. v. Sablosky,* 418 Pa. 34, 47-49, 209 A.2d 375, 381-82 (1964).

In *Commonwealth ex rel. v. Archbald,* 195 Pa. 317, 320, 46 A. 5, 6 (1900), this Court reasoned: "Whether the person to whom the case is sent be called an assessor, an auditor, a referee or a master is of no importance, the substance of the matter is the right of the court in exceptional cases to avail itself of exceptional assistance, in executing or supervising the execution of the details of its work, not requiring the exercise of exclusively judicial functions."

This is certainly an exceptional case requiring exceptional assistance. We have found nothing to indi-

---

[9] *Jackson v. Hendrick,* No. 71-2437, February Term, 1971, at 250 (Pa. C.P. Phila., filed April 7, 1972).

[10] See Brief for Philadelphia Bar Association as Amicus Curiae at 2-3.

Certainly, if the master exceeds the scope of his authorization, appellees could go before the court and request appropriate relief.

cate that in exercising its discretion the trial court violated Rules 1514 or 1515.[11]

[11] Appellees contend that because appointment of the master was not requested by either party the court abused its discretion by making the appointment. We disagree. The decision whether to appoint a master is within the sound discretion of the court of equity. See *Commonwealth ex rel. v. Archbald*, 195 Pa. 317, 320, 46 A. 5, 6 (1900). The function of the master is to assist the court in compiling accounts or other complicated data. It is the court, regardless of the silence of the parties, which must decide whether it requires such assistance.

We are similarly unimpressed with appellees' alternate theories. First, the decree is not, as appellees urge, unconstitutionally vague. Even assuming that something other than a statute can be void for vagueness, but see Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 68 (1960), the order here adequately appraises appellees of what the court expects of them. This is not an injunction which must provide the parties notice of what is forbidden. Appellees are clearly instructed to cooperate with the master and appellants in preparing a plan to eliminate the unconstitutional aspects of the Philadelphia prisons. In light of the court's detailed findings of fact it is difficult to imagine how the instructions could be more explicit.

Second, we find somewhat incredible appellees' argument that the court's order constitutes a breach of the doctrine of separation of powers. We have already stated that the trial court's opinion contains no basis for the fear expressed by appellees that the master will attempt to act as administrator of the Philadelphia prison system. See text accompanying note 11 supra. We cannot see how the court, either itself or through the master, will impermissibly intrude into the executive branch of government. If appellees suggest that a court may not order the executive branch of government or its agents to cease unconstitutional practices or eliminate unconstitutional conditions, we must disagree. See *Brown v. Board of Educ.*, 347 U.S. 483, 74 S. Ct. 686 (1954) ; *Hobson v. Hansen*, 269 F. Supp. 401 (D.D.C. 1967), aff'd sub nom., *Smuck v. Hobson*, 408 F.2d 175 (D.C. Cir. 1969) (en banc) ; *Cerra v. East Stroudsburg Area School Dist.*, 450 Pa. 207, 299 A.2d 277 (1973) ; *Pennsylvania Human Relations Comm'n v. Chester School Dist.*, 427 Pa. 157, 233 A.2d 290 (1967).

414

The order of the Commonwealth Court is modified and the decree of the court of common pleas is reinstated. Each party pay own costs.