758 F.2d 83
 HARRIS, Martin a/k/a Carmichael, Arthur Prison Number
8016203, et al., Appellants,
v.
Irene PERNSLEY, individually and in her official capacity as
Welfare Commissioner of the City of Philadelphia,
et al., Appellees.
 No. 84-1039.
 United States Court of Appeals,
Third Circuit.
 March 21, 1985.
 
 SUR PETITION BY MARKS AND WALDMAN FOR REHEARING
 Before ALDISERT, Chief Judge, SEITZ, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER, BECKER, Circuit Judges, and TEITELBAUM, District Judge.*
 The petition for rehearing filed by appellees Ronald J. Marks and Jay C. Waldman in the above entitled case having been submitted to the judges who participated in the decision of this court, 755 F.2d 338, and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 Circuit Judges ADAMS, HUNTER, WEIS, GARTH and BECKER would grant the petition for rehearing.
 Circuit Judge ADAMS dissents from the denial of the petition for rehearing in banc because he believes that this case raises important questions regarding the scope of the Younger abstention doctrine, and because it appears that the state court proceedings involving the Philadelphia County Prison system are being conducted in good faith and with due haste.
 SUR PETITION BY CITY APPELLEES FOR REHEARING
 The petition for rehearing filed by City Appellees in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 Circuit Judges ADAMS, HUNTER, WEIS, GARTH and BECKER would grant the petition for rehearing.
 Judge Adams dissents from the denial of the petition for rehearing in banc because he believes that this case raises important questions regarding the scope of the Younger abstention doctrine, and because it appears that the state court proceedings involving the Philadelphia County prison system are being conducted in good faith and with due haste.
 GARTH, Circuit Judge, dissenting from the Court's denial of the City of Philadelphia's Petition for Rehearing:
 My dissent from the refusal of the majority to order Williams v. Red Bank Board of Education, 662 F.2d 1008, 1009 (3d Cir.1981) abstention was grounded on the principle that Federal courts should not take over, manage and operate city or state prisons when the state courts are enforcing all constitutional--including federal constitutional--requirements. At the time that I dissented from the panel opinion, I wrote:
 I do not believe that Supreme Court teachings, comity, or reason support a federal court's intrusion into a state's administration of its prison system when the state courts have been and presently are, exercising supervision over these institutions and are doing so in accordance with state and federal constitutional requirements.
 The pleadings clearly reveal that since March 15, 1976, the Court of Common Pleas has not only imposed corrective measures on the Commonwealth Prison Administration, but has done so continuously through various consent decrees. As recently as June 22, 1984, additional orders have been entered by the state courts. For a federal court to step in and ignore the state's own corrective proceedings is, so far as I am concerned, as inappropriate and wrong as it is for a federal court to run state hospitals, see Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. , 908 [79 L.Ed.2d 67] (1984); Youngberg v. Romeo, 457 U.S. 307 [102 S.Ct. 2452, 73 L.Ed.2d 28] (1982), or schools, see Williams v. Red Bank Board of Education, 662 F.2d 1008, (3d Cir.1981). This is so particularly where the state court's have been strictly enforcing federal constitutional mandates.
 The Petition for Rehearing that followed the filing of our opinions in Harris pointed out that Jackson v. Hendrick, No. 71-2437, slip op., (C.P.Phila. April 7, 1972), which resulted in a consent decree, affirmed by the Pennsylvania Supreme Court, 457 Pa. 405, 321 A.2d 603 (1974), "... was originally brought as a broad challenge to conditions in the Philadelphia prisons, ... including ... overcrowding.... The case extends to every detention or prison facility within the city ... In recent years, the Jackson court has focused intensely on overcrowding.
 "The supervision by the Jackson court has been active, and has involved not only the court but also the full time work of a master appointed by the court. During 1984, the Jackson court has taken the following steps:
 1. On April 23, 1984, the Jackson court ordered an emergency release program and an expanded program of bail review hearings to expedite the release of detainees who do not pose a threat to the community. That same order required the city to construct new prison facilities, including an additional 1200 cells in 1986 and 1987.
 2. On June 22, 1984, the Jackson court imposed population caps on the existing Philadelphia prisons effective October 1984 to decrease the prison population from 3600 to 2700 inmates."
 City Appellees' Petition for Reconsideration in Banc.
 The record before the panel of this court did not disclose the State Court's activities and orders after June, 1984. The Petition for Rehearing now reveals the following:
 On October 11, 1984, after finding that the City was in contempt because the population exceeded the court-ordered cap, the state court fined the City in excess of $200,000 per month. In addition, the state court released approximately $300,000 in previously collected fines from the City and established a committee to distribute these funds. The City appealed the June 22, 1984 and the October 11, 1984 orders. On October 17, 1984, the Chief Justice of Pennsylvania Supreme Court issued a stay of these orders pending their appeals. On November 22, 1984, the Pennsylvania Supreme Court assumed plenary jurisdiction of the appeals at the request of the City. The Supreme Court also agreed to consider the legality of the "one man, one cell" rule which underlies all of the Jackson court's orders."
 Thus, not only have the lower state courts in Pennsylvania been actively engaged in controlling and supervising the prison population and prison conditions of the Philadelphia County prisons, but it now appears that effective November 21, 1984, the Pennsylvania Supreme Court itself has taken over all proceedings filed in such actions. More importantly, the Pennsylvania Supreme Court has directed compliance with court orders concerning: (1) construction of new facilities, (2) population caps, (3) release of prisoners, and (4) conditions of confinement including double and triple celling.
 These are the very issues involved in the federal proceeding before us and, as the Petition for Rehearing observes, unless Williams' abstention is ordered, the overall state court review of the Philadelphia County prisons will be subject to conflicting and contrary determinations respecting each of these vital state concerns. Accordingly, as a matter of federal court policy, I suggest that the panel majority has erred in its failure to acknowledge considerations of comity due the Commonwealth.
 Moreover, as a matter of law, the majority's analysis of the Williams abstention doctrine, and its failure to apply Williams here, is just plain wrong and indefensible. Perhaps an incorrect analysis which leads to an unhappy result may be overlooked or tolerated in private litigation where the stakes and the property interests are not too high. Where, however, the result of a distorted reading of Supreme Court and Third Circuit precedents leads to the very federal intrusion into state concerns that the Supreme Court and considerations of comity have counseled against, then I suggest we have exceeded our functions by far.
 In this case, the Pennsylvania state courts have been overseeing and supervising the Philadelphia County Prisons since 1972. A special master is in place. Fines and other coercive means have been employed to correct a system that, as Chief Justice Nix of the Pennsylvania Supreme Court recently held, "... results from the fact that past successive city administrations have avoided the inevitability of providing additional facilities through rationalization, dilatoriness and procrastination." Jackson v. Hendrick, No. 180 E.D.Misc.Docket 1984 (Pa., October 17, 1984).
 The attention that has been given to prison problems in Philadelphia County prisons is further evidenced by the observation of Chief Justice Nix of the Pennsylvania Supreme Court that
 
 
 1
 ... neither party charges this administration with tactics of such dimensions. Under the present city administration, a new facility of 650 beds is being constructed in the northeast section of Philadelphia. We are advised that the excavation stage of that project has been completed. Discussions are being had regarding the establishment of a center city holding and criminal justice center. It has also been agreed that the city is now cooperating in the bail release provisions of earlier orders. Although such efforts show a willingness to comply with the June 22 order in the future, the employment of a leisurely pace in planning and executing these intentions will no longer be tolerated.
 
 
 2
 Id. Thus in addition to a special master and constant and continuing lower court attention, the Supreme Court of Pennsylvania has now taken charge of this unfortunate situation.
 
 
 3
 Under these circumstances, I ask the question that the majority has never sought to answer--what more, consistent with Supreme Court precedent and directives, should, or could, a federal district court do, to accomplish what is presently underway in the Philadelphia court system? The question which in my opinion this Court in banc should answer is: under Williams, supra, why should not the federal court bide its time until, if ever, it appears that the stringent measures and remedies prescribed by Pennsylvania to vindicate federal court rights, have either failed or are unavailing?
 
 
 4
 Indeed, in light of the current posture of the orders which have been entered by the Pennsylvania courts, I suggest that this Court in banc should also consider: what actions could a federal district court judge possibly take (a) without upsetting and destroying a viable program designed by the state courts to correct the Philadelphia prison conditions and (b) without trespassing on state court directives that are presently in place and in effect.
 
 
 5
 In my earlier dissenting panel opinion, I referred to the fact that this court has scheduled for a full court hearing another case which concerns abstention and comity considerations. Georgevich v. Straus, No. 84-5194 (3d Cir. January 9, 1985) deals with the manner in which Pennsylvania may parole its prisoners. The issue there is an important one, as is the issue here. True, the abstention issue in Georgevich differs from the abstention issue in this case. But in both cases comity considerations are involved and are paramount.
 
 
 6
 I wrote earlier, and I now write again, to urge in light of the recent developments brought to our attention by the Petition for Rehearing and the Pennsylvania Supreme Court's orders, that if Georgevich warrants the attention of the full court of the Third Circuit, then even more so does this case. Because a majority of this court has not so voted, I am obliged to dissent from the court's order which denies rehearing.
 
 
 7
 I would grant the Petition for Rehearing of the City appellee.
 
 
 
 *
 Hon. Hubert I. Teitelbaum, Chief Judge, United States District Court for the Western District of Pennsylvania, on panel rehearing only