J-S09032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: JAMES KIRK A/K/A JAMES ALLEN KIRK A/K/A JAMES ALLAN KIRK | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ESTATE OF JAMES KIRK | : : : : | |
| | : | No. 1442 EDA 2020 |

Appeal from the Decree Entered June 24, 2020
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s):  No. 189DE of 2018

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 13, 2021**

The Estate of James Kirk ("the Estate") appeals from the June 24, 2020, Decree, which reversed and vacated a Decree entered on January 17, 2020, and reinstated in its entirety a Decree entered on January 3, 2020.  The January 3, 2020, Decree had found in favor of Stapleton Roofing, Inc. ("Stapleton").  We affirm.

For the purpose of this appeal, we adopt the trial court's recitation of the factual and procedural history of the instant case, as set forth in its Opinion.  *See* Trial Court Opinion, 11/2/20, at 1-6.

The Estate presents the following claims for our review:

A.  Did the Orphans' Court err when it found that the contract failed to satisfy the requirements of the Home Improvement Consumer Protection Act[,] 73 P.S. §[§] 517.1[-517.18, ("the Act")] and entered an award in favor of [Stapleton] in *quantum meruit*?

B. Did the Orphans' Court err in finding for "Stapleton Roofing, Inc.[,]" when the agreement was with "Stapleton Contract, Inc.[,]" an entity which does not exist?

C. Did the Orphans' Court err in finding that the amount due to [Stapleton], $61,716.03, was correctly calculated?

D. Did the Orphans' Court err by denying [the Estate's] Motion for Reconsideration?

Brief for Appellant at 5.

As this Court has explained,

[t]he findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

We are not constrained to give the same level of deference to the [O]rphans' [C]ourt's resulting legal conclusions as we are

- 2 -

> to its credibility determinations.  We will reverse any decree based on palpably wrong or clearly inapplicable rules of law.  … [W]e will not lightly find reversible error and will reverse an [O]rphans' [C]ourt decree only if the Orphans' [C]ourt applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Jackson*, 174 A.3d 14, 23-24 (Pa. Super. 2017) (citation omitted).  In the exercise of the limited jurisdiction conferred on it by statute, the Orphans' Court must apply the rules and principles of equity.  *Estate of Hahn*, 369 A.2d 1290, 1292 (Pa. 1977); *accord In re Estate of Pedrick*, 482 A.2d 215, 222 (Pa. 1984)

The Estate first claims that the Orphans' Court erred when, despite finding that the contract between the Estate and Stapleton failed to comply with the Act, the court nevertheless awarded Stapleton "the reasonable value of services performed pursuant to 73 P.S. § 517.7(g), under the theory of *quantum meruit*."  Brief for Appellant at 17 (emphasis omitted).  The Estate argues that Stapleton never pled *quantum meruit* or unjust enrichment as a basis for relief.  *Id.*  According to the Estate, the Act applies to "compliant contractors."  *Id.* at 18 (emphasis omitted).  The Estate asserts that "to allow *quantum meruit* [recovery] to non-compliant contractors would eviscerate the protections of the Act."  *Id.*

The Estate argues that case law, including our Supreme Court's holding in *Shafer Elec. Constr. v. Mantia*, 96 A.3d 989 (Pa. 2014) ("*Shafer Electric*"), "simply allows *quantum meruit* recovery for contractors that have complied with the requirements of the Act, but was not intended to deny

- 3 -

*quantum meruit* for contractors that were non-compliant with the Act." Brief for Appellant at 18. The Estate argues that the trial court's interpretation of the Act would allow contractors to recover for *quantum meruit* no matter how egregious the contractor's non-compliance with the Act. ***Id.*** According to the Estate, the record clearly indicates that Stapleton did not advise the Estate of "the basic material facts of the contract[,] and never required change orders for additional charges." ***Id.***

Issues of statutory interpretation present this Court with questions of law; accordingly, our standard of review is *de novo*, and our scope of review is plenary. **Shafer Electric**, 96 A.3d at 994. The interpretation of Section 517.7(g) is guided by the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S.A. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). Finally, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." **Commonwealth v. Rieck Inv. Corp.**, 213 A.2d 277, 282 (Pa. 1965); **accord Shafer Electric**, 96 A.3d at 994.

Section 517.7(g) provides as follows:

> **(g) CONTRACTOR'S RECOVERY RIGHT.—** Nothing in this section shall preclude a contractor who has complied with subsection (a) from the recovery of payment for work performed based on the reasonable value of services which were requested

- 4 -

by the owner if a court determines that it would be inequitable to deny such recovery.

73 P.S. § 517.7(g).

In its Opinion, the Orphans' Court addressed the Estate's claim and concluded that it lacks merit. ***See*** Orphans' Court Opinion, 11/2/20, at 7-11. We agree with the sound reasoning of the Orphans' Court and, discerning no error, affirm on this basis with regard to the Estate's first claim. ***See id.***

In its second claim, the Estate argues that the Orphans' Court improperly found in favor of "Stapleton Roofing, Inc.," where the Estate's agreement was with "Stapleton Contract, Inc.," an entity that does not exist. Brief for Appellant at 19. The Estate argues that Stapleton Contracting, Inc. was never legally created, and there is no fictitious name registration for that entity. ***Id.***

In its Opinion, the Orphans' Court addressed this claim and concluded that it lacks merit. ***See*** Orphans' Court Opinion, 11/2/20, at 12-13. We agree with the sound reasoning of the Orphans' Court, and affirm on the basis of its Opinion with regard to the Estate's second claim. ***See id.***

In its third claim, the Estate challenges the Orphans' Court's calculation of the amount due to Stapleton. ***See*** Brief for Appellant at 19. According to the Estate, although the award is presumably based upon *quantum meruit*, there was no testimony regarding the value of the specific services rendered by Stapleton; there was no testimony regarding credit for items not performed; and there was no testimony regarding charges that were

duplicative. ***Id.*** The Estate claims that change orders were never properly prepared or signed by the Estate. ***Id.*** at 20. Further, the Estate claims that "Stapleton charged for extras that were not included in the initial proposal[,] in almost every instance." ***Id.*** In addition, the Estate asserts that there were contracted items never completed, such as sanding and refinishing of wood steps, and drywall of the outside walls." ***Id.*** The Estate also directs our attention to Thomas Stapleton's testimony that his company was paid $40,183.97. ***Id.*** However, the Estate asserted that Stapleton was paid a total of $50,183.97, as evidenced by a check. ***Id.***

The Orphans' Court's Opinion addresses this claim and concludes that it is without merit. ***See*** Orphans' Court Opinion, 11/2/20, at 13-14. We agree with the Orphans' Court's reasoning and conclusion, and affirm on the basis of its Opinion with regard to the Estate's third claim. ***See id.***

Finally, the Estate argues that the Orphans' Court erred in not granting its Motion for Reconsideration. ***See*** Brief for Appellant at 21. However, the refusal of a trial court to reconsider a final decree is not reviewable on appeal. ***See Huntington Nat'l Bank v. K-Cor, Inc***, 107 A.3d 783, 787 (Pa. Super. 2014) (stating that "Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal.") (quotation omitted). We therefore affirm the Decree of the Orphans' Court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2021

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
## ORPHANS' COURT DIVISION

### O.C. No. 189 DE of 2018
### Control #200283

### Estate of JAMES KIRK, Deceased

### OPINION SUR APPEAL

Christina Lynne Parker, Administratrix of the Estate of James Kirk (hereinafter "Appellant") appeals the Orphans' Court's Decree dated June 24, 2020, which reversed and vacated the Decree of January 17, 2020 and reinstated, in its entirety, the Decree dated January 3, 2020, finding in favor of Stapleton Roofing, Inc. (hereinafter "Appellee").[1] The Orphans' Court issues this Opinion pursuant to Pa. R.A.P. 1925(a).

## Facts and Procedural History:

Appellant was appointed Administratrix of the Estate of James Kirk, a/k/a James Allen Kirk, a/k/a James Allan Kirk on December 6, 2016. At the time of his death on February 15, 2016, Decedent, Appellant's father, owned a row home located at 7462 Brockton Road, Philadelphia, Pennsylvania (hereinafter "Property"). Appellant retained licensed public insurance Adjuster Blaine Ronald Jelus (hereinafter "Adjuster Jelus") to represent the Estate in settling three property damage claims with Decedent's homeowners' insurance company, State Farm



James Kirk, Deceased

2018018905043

Insurance Company. The Property suffered from storm, plumbing, and "death exposure" damage. As described by Adjuster Jelus: "[Appellant]'s father had died in the building, and I did an adjustment there for death exposure from what happened when the body decomposed in the building. There were two previous claims: one for storm damage and one for failure of a plumbing system."[2] Adjuster Jelus referred Appellant to Tom Stapleton of Stapleton Roofing, Inc. (hereinafter "Appellee") to make the necessary repairs.[3]

The value of the Property, as determined by Appellant in her petition for grant of letters filed with the Register of Wills, was $50,000.[4] Appellant submitted no conflicting proof of value. Appellee testified credibly that his agreement for repairs to the Property was drawn up to coincide with the insurance loss,[5] and was set forth on Exhibits P2 and P3 which were to be read together.[6] The initial proposal dated February 27, 2017 laid out the work to be completed for $67,400.00.[7] The Contractor Agreement between the parties dated May 25, 2017 was prepared with the assistance of Adjuster Jelus, contained the terms of payment, and was signed in counterparts by Appellant and Appellee on May 25, 2017, and May 30, 2017, respectively, (hereinafter, the "Agreement").[8] The Agreement called for Appellee to complete all contracted work for $67,400.00 with the first $46,847.50 to be paid from insurance settlement proceeds and the remaining balance of $20,552.50 from the proceeds of the sale of the Property.[9]

2

During the course of the work, Appellant's husband David Parker (hereinafter "Mr. Parker") visited the job site multiple times each week and observed the Appellee's progress.[10] Mr. Parker renovated houses for profit in the past, though he was not doing the renovations in this instance because, according to him, he lacked funding.[11] Appellant and Appellee were on the job site at the same time once, approximately a week prior to the completion of the work.[12]

Appellee and Adjuster Jelus testified that shortly after the work began it became apparent that additional repairs to the Property's plumbing and electrical systems would be necessary.[13] Work ceased so that Adjuster Jelus could inquire if the additional repairs might be covered and paid for by insurance.[14] After Adjuster Jelus determined that the additional repairs were not covered by insurance, he spoke with Appellant about the additional work, conveying to her that "they wouldn't be able to fix her home properly without the plumbing and electrical work being done, and she had to speak with [Appellee] directly."[15] When asked whether he had discussed the repairs and their costs with Appellant, Adjuster Jelus testified "We had discussions over the phone."[16] Thereafter, Appellant told Appellee that "he had to go – move forward."[17]

Appellee performed and completed the additional work totaling $34,500.00.[18] Shortly before the completion of work, Appellee was unable to contact Mr. Parker. "His phone was off, disconnected, not responding to any emails of the email that I

3

had at the present time."[19] Appellant contacted Appellee informing him that she would be his point of contact.[20] Sometime thereafter, Appellee finished work and was subsequently locked out of the Property.

"[A] few weeks" after being locked out of the Property, Patrick Shea, Esq., Appellant's attorney at the time, contacted Appellee. Attorney Shea provided Appellee with a punch list and a new phone number for Mr. Parker.[21] Mr. Parker instructed Appellee to, per the single item on the punch list, install sheetrock on the garage ceiling, and Appellee completed this item.[22] At this point, Appellee received $25,941.49 in payments from insurance proceeds by way of four checks. One check was for $10,000.00 and the other for $1,132.67, both dated June 23, 2017, and Appellee received and deposited both.[23] Appellee received two additional checks later that summer, dated July 21, 2017, in the amounts of $13,959.31 and $849.51, and Appellee received and deposited both.[24]

The day before settlement on the Property, having received no further payments, Appellee filed a Mechanics Lien on the property for $75,958.51.[25] In order to complete the closing and remove the Mechanics Lien, the parties agreed that Appellant would immediately pay $14,242.48 to Appellee, with the parties' counsel opening a joint escrow account in the amount of $61,716.03 from the sale proceeds to be deposited therein. The parties reduced the agreement for escrow to writing and funded the escrow account on December 15, 2017.[26] The property was sold for

4

$174,500.[27] Appellee was paid the $14,242.48.[28] Appellee testified that he completed all work and received a total of $40,183.97 in payments.[29] The Agreement was $67,400 for the contracted work, with an additional $34,500 agreed for the plumbing and electrical work. $61,716.03 remained unpaid and due to Appellee.

On February 16, 2018, Appellee, Petitioner below, filed a Petition to Show Cause Why the Administratrix Should Not Release Funds Held in Escrow, or in the alternative, File an Accounting for Audit with the Orphans' Court. Appellant responded filing an Answer with New Matter and Counterclaims. In accordance with the Court's Case Management Decree, Appellee filed a Motion in Limine to preclude Appellant from calling witnesses or presenting documentary evidence for Appellant's failure to comply with the Decree. On May 6, 2019, that Motion was granted, however at trial, in the interest of justice, the undersigned Judge permitted Appellant to introduce limited documentary evidence and rebuttal testimony. Neither the Motion in Limine nor any issues arising from its determination are the subject of this appeal.

Following the adjudicatory hearing held on June 26, 2019, and after consideration of all post-trial submissions, the Orphans' Court issued a Decree dated January 3, 2020 finding that Appellee, Stapleton Roofing, Inc., was entitled to recover in the amount of $61,716.03 for the reasonable value of services performed

5

pursuant to 73 P.S. §517.1(g)[sic], under *quantum meruit*. Said sum was ordered released from escrow in order to pay Appellee.

On January 15, 2020, Appellant filed a Motion for Reconsideration of the January 3, 2020 Decree. The Court granted Appellant's request for reconsideration by Decree dated January 17, 2020 and gave Appellee time to respond. After review of the response and submission, the Orphans' Court issued a Decree dated June 24, 2020, reversing and vacating the January 17, 2020 Decree and reinstating the January 3, 2020 Decree in its entirety. The timely appeal followed from the Decree dated June 24, 2020 reinstating the January 3, 2020 Decree in its entirety.

**Issues and Jurisdiction**

This Orphans' Court has jurisdiction over the underlying matter pursuant to 20 Pa. C.S. Sections 711 and 712.

Appellant filed its Pa. R.A.P. 1925(b) Statement of Matters Complained of on Appeal on August 17, 2020, pursuant to the Orphans' Court Decree dated July 27, 2020. The Statement is neither concise nor clear, and the statement is repetitive, confusing, and lacking essential details while misstating others. In an attempt to fully and fairly address the issues, the Orphans' Court has restated the same, without repetition in a form most amenable to a fair and fruitful discussion. Any issues not preserved should be dismissed from consideration.

6

The restated issues are as follows:

I.   Did the Orphans' Court err when it found that the contract failed to satisfy the requirements of the Home Improvement Consumer Protection Act 73 P.S. §517.1 and entered an award in favor of Appellee in *quantum meruit*?

II.  Did the Orphans' Court err in finding for "Stapleton Roofing, Inc." when the agreement was with "Stapleton Contracting, Inc." an entity which did not exist?

III. Did the Orphans' Court err in finding that the amount due to Appellee, $61,716.03, was correctly calculated?

IV.  Did the Orphans' Court err by denying Appellant's Motion for Reconsideration?


## Discussion

I.   The Orphans' Court did not err when it found that the contract failed to satisfy the requirements of the Home Improvement Consumer Protection Act 73 P.S. §517.1 and entered an award in favor of Appellee in *quantum meruit.*

   A. The Home Improvement Consumer Protection Act does not preclude recovery under a theory of *quantum meruit.*

Appellant contends that the Home Improvement Consumer Protection Act disallows recovery by Appellee against a home owner in *quantum meruit* unless a home improvement contract meets the requirements of 73 P.S. §517.7(a).

This exact issue was addressed and answered by our learned Supreme Court in *Shafer Electric & Construction v. Mantia* wherein the Court stated that Section

7

517.7(g) "speaks only to the availability of remedies to a contractor who complies with Section 517.7(a)" . . . and "does not contemplate the preclusion of common law equitable remedies such as *quantum meruit* when a party fails to comply with subsection (a)."[30]

Appellant is mistaken regarding Supreme Court precedent. The Orphans' Court correctly determined that the contract between the parties did not satisfy the requirements of the Home Improvement Consumer Protection Act, and therefore was not an enforceable contract under the Act, however, as stated by the Supreme Court in *Shafer Electric and Construction v. Mantia*, that finding does not preclude the award of damages under *quantum meruit*. In accordance with Supreme Court precedent and supported by evidence of record, the Orphans' Court properly found that the Appellee Stapleton Roofing, Inc. was entitled to recovery under the common law principle of *quantum meruit*.

### B. The Orphans' Court properly applied the equitable remedy of *Quantum Meruit*.

The Orphans' Court granted Appellee recovery under *quantum meruit*, "[which] is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services."[31] *Quantum meruit* requires the presence of three elements: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits

8

under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[32] "In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched."[33] "Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred."[34]

Appellee's renovation of the Property resulted in the sale of a house, initially valued at $50,000.00, for $174,500.00. The renovation amounted to an increase in value of $124,500.00, from which Appellant only paid Appellee the total sum of $40,183.97. For Appellant to retain the net profit of $84,316.03 without adequately compensating Appellee is grossly unjust in that it was only through Appellee's labor and materials that the property was enriched.

Appellant retained the services of Adjuster Jelus, a licensed public adjuster, who negotiated with the insurance company and provided estimates of damages and costs of repairs/replacement, totaling $101,900.00, in conformity with industry standards. All parties, including Appellant, agreed to the sum. The parties relied upon the expertise of Adjuster Jelus; neither party objected to his testimony or to the charges for additions. The Orphans' Court, as the trier of fact, found the testimony of Adjuster Jelus on the repairs needed, the associated costs, and inspections of the completed work, credible.

9

Appellant knew of all work performed because her husband David Parker personally observed the work being done and while using his prior contracting expertise, he passed along his observations as well as work proposals to Appellant.[35] The Orphans' Court found Appellee's testimony as to his communications with David Parker more credible than Mr. Parker's denials of the same. Further, the Orphans' Court found that Mr. Parker held himself out as and acted as Appellant's de facto project manager based on his presence on site, and his experience in rehabilitating and selling properties for profit. Appellant was aware that extra plumbing and electrical work was necessary. Appellant's insurance adjuster, Jelus, submitted a claim in the exact amount Appellee contends the work was worth. Appellant was physically present at the site after a substantial amount of work had been completed. The Appellant locked Appellee out of the property sometime afterward, and then allowed him back on the property to complete a one item punch list, which Appellee completed.

By allowing Appellee to continue working, Appellant accepted the benefits of Appellee's labor and materials; Appellant unjustly retained those benefits by not paying Appellee. Accordingly, it would be unjust to allow Appellant to retain the benefit of the increase in the value of the Property which directly resulted from Appellee's work. Therefore, the Orphans' Court properly concluded that all

elements for recovery *in quantum meruit* were present and that such a recovery was required.

### C. Appellee's pleadings were sufficient for the Court to grant recovery under *quantum meruit*.

Appellant contends that the Court erred when it granted Appellee recovery under unjust enrichment which Petitioner did not plead.

The Orphans' Court functioning in equity has broad discretion in determining relief and fashioning remedies. Equitable remedies "are distinguished by their flexibility, their unlimited variety," and that there "is in fact no limit of their variety and application.[36]

In the instant case, Appellee averred sufficient facts in its Petition and proved at trial the reasonable value of its services for the work performed. Appellant hired Appellee hired in connection with the property damage claim submitted to the decedent's homeowner's insurance company, and for additional work not covered by insurance. Appellee completed the work. The property sold for $174,500.00 an increase of $124,500 over the initial property value, and Appellee had filed a mechanics lien in the amount of $75,958.51 due to non-payment. Pursuant to the written escrow agreement, Appellee withdrew its mechanics lien and received $14,242.49, with the balance of $61,716.03 placed into the escrow account held in the parties' attorneys' names.[37] The Orphans' Court, within its broad discretion while fashioning equitable remedies, properly awarded *quantum meruit* damages in

11

accordance with Appellee's request for the funds in escrow. Appellee's Petition filed in this matter plead facts sufficient for a claim for *quantum meruit*, and the Orphans' Court is empowered to grant this relief.

## II. The Orphans' Court did not err in finding for "Stapleton Roofing, Inc." when the Agreement used the entity name "Stapleton Contracting, Inc." where no entity with that exact name existed.

Our Courts have consistently held that a variance in the name used by an entity will not necessarily bar that entity from recovery:

> The plaintiff . . . is the person with whom defendants actually contracted, and they have received from it the goods they contracted to buy. It would be inequitable to permit that which as at best a mere misnomer to prevent their being compelled to pay their just debt to the plaintiff. . . . The proper plaintiff by its proper name has brought suit, and to escape the duty of paying for the goods which they bought and received, the defendants should at least show, if it be true, that they were in some manner prejudiced or injured by the plaintiff of an assumed name in the execution of the contract.[38]

Appellant has not shown, nor argued, that she was in some way prejudiced or injured by the difference in name on the Agreement. In the present situation, the reasons for permitting the entity of "Stapleton Roofing, Inc." to recover are justifiable, if not compelling.

In finding for the Appellee, Orphans' Court gave great significance to the contents of Exhibit R1, which consisted of six checks from Wells Fargo Home

12

Mortgage totaling $50,183.97 made payable to "Stapleton Roofing, Inc." and Estate of James A. Kirk. All but Check No. 4842 in the amount of $10,000.00 are endorsed by both Appellee and Appellant.[39]

The issuance and use of these checks conclusively establishes that all parties knew that "Stapleton Roofing, Inc." was the entity performing the services and was the entity bound to perform subject to the approval of the co-payee, the Estate of James A. Kirk. The fact that Appellant never objected to the name on these checks, and that Appellant endorsed them over to Stapleton Roofing, Inc. constituted clear and convincing evidence that Appellant acknowledged on behalf of the Estate that she had an agreement with Stapleton Roofing, Inc. and that it was the same as Stapleton Contracting, Inc.

It must also be noted that the record is void of any evidence, or even an assertion that said use has caused any prejudice. Further, by endorsing the checks and using them to pay Stapleton Roofing, Inc. she not only acknowledged the business relationship between the Estate and Stapleton Roofing, Inc., but is also now estopped from denying its existence.[40]

### III. The Orphans' Court did not err in finding that the amount due to Appellee, $61,716.03, was correctly calculated.

The Orphans' Court correctly calculated the amount due to Appellee. The parties agreed to pay Appellee $67,400.00 for the work set forth in the Agreement,

13

and the parties agreed to pay $34,500.00 for the additional work on the Property's plumbing and electrical systems, the work totaling $101,900.00. The Orphans' Court credited Appellee with receipt of $40,183.97, composed of the five checks, and Appellee and Appellant endorsed each check: Check No. 4640 in the amount of $10,000.00, Check No. 4641 in the amount of $1,132.67, Check No. 6847 in the amount of $13,959.31, Check No. 7054 in the amount of $849.51, and Check. No. 1187 in the amount of $14,242.48.[41] The Orphans' Court found Appellee's credible testimony that it never received Check No. 4842 in the amount of $10,000 clear and convincing. Accordingly, Appellee received $61,716.03 less than the agreed upon, reasonable value of his services.

The Orphans' Court found the testimony presented by Appellee credible as to the payments received and the work performed. However, the testimony from Appellant's only witness, her husband, was riddled with inconsistencies, including the failure to come forth with testimony/evidence to rebut Appellee's showing that it was asking for the value of its services which it had not otherwise received.

Regretfully, Appellant's complained of issue regarding the calculation of the amount awarded Appellee lacked such conciseness as to permit the Orphans' Court from giving a more specific discussion.

## IV. The Orphans' Court did not err by denying Appellant's Motion for Reconsideration.

Appellant's allegation of error is based upon the incorrect assertion that the Motion for Reconsideration was denied. In fact, the Orphans' Court granted the motion on January 17, 2020, with the Orphans' Court vacating the prior January 3, 2020 Decree wherein it found for Appellee. Thereafter, the Court did reconsider its decision and on June 24, 2020 reentered its January 3, 2020 Decree. Appellant's allegation that the Court did not render reconsideration is plainly incorrect.

Regardless of Appellant's position, this Honorable Superior Court, as well as all other Pennsylvania Appellate Courts, has long held that an order denying a Motion for Reconsideration is not appealable. In *Blackburn v. King Investment Group, LLC*, the Court held "Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal."[42]

Apparently, Appellant would have the Orphans' Court address the alleged errors regarding denying reconsideration as well as the alleged errors in its ultimate decision, basically attempting to require the Orphans' Court to answer the same errors twice. The Orphans' Court respectfully suggests this issue is improper and should require no further response.

15

## Conclusion

It is respectfully submitted that the Orphans' Court properly found that Appellant was liable to Appellee for the monetary value of the labors and materials by which she was unjustly enriched, even though recovery under the contract itself was barred by the Home Improvement Consumer Protection Act, 73 P.S. §517.1, *et seq.* The Act was designed to prevent unfair and predatory practices by those in the home improvement industry. Especially important are the Act's requirements that in order for a covered home improvement contract to be enforceable, the contractor must register with the Pennsylvania Bureau of Consumer Protection, and the contract must conform to the Act's specific requirements. Our legislature wisely envisaged situations such as here, where, in reality the victim was not the homeowner, but the contractor.

This Orphans' Court has not taken lightly its duty to extend relief only to prevent manifest injustice. It considered all relevant and credible evidence, such as the fact that the "homeowner" was pursuing renovations for purposes of financial gain upon resale and that the "homeowner" had not lived in the property or intended to live in the property in the future. Further, unlike most consumer homeowners, Appellant was aided by the expertise of a licensed public adjuster, her insurance company, and her husband with his experience in rehabbing properties in determining the value of the loss as well as the agreed upon cost of the subsequent

additions. The adjustment of the original loss was with the approval of Appellant, which established the value of repairs, leaving her argument that the Orphans' Court had no basis for calculating damages meritless. Likewise, the assistance rendered Appellant with her husband and her Adjuster, and her subsequent agreement with Appellee for subsequent repairs clearly established the value of services performed.

In rendering its decision, the question of credibility was one of great importance. Appellant made allegations concerning performance of work and payments which simply did not comport with the documents or the evidence. And, Appellant did not establish other allegations of improper performance to any degree of particularity.

Under all circumstances Appellant received the services that she actively and intelligently bargained for, and as has already been established, that bargaining cannot be legally enforced. However, the evidence surrounding the bargain firmly establishes the value of the services performed and thus the unjust enrichment conferred on Appellant.

It is therefore respectfully submitted that the appeal of this Court's Decree be affirmed.

_____      _____
11/2/20 20                     MATTHEW D. CARRAFIELLO, J.
Date



Richard Colden, Jr., Esquire

Robert DeLuca, Esquire

_____

[1] As set forth in more detail below, the Orphans' Court Decree of January 3, 2020 was vacated by Decree dated January 17, 2020 which granted Appellant's request for reconsideration and gave Appellee time to respond. After review of the response and submission, the Orphans' Court issued its June 24, 2020 Decree reversing and vacating the January 17, 2020 Decree and reinstating the January 3, 2020 Decree in its entirety.

[2] N.T. p. 14-15.

[3] N.T. p. 15. Appellee's president and owner operator, Thomas J. Stapleton, III, who at all times relevant acted on its behalf, is likewise referred to as "Appellee."

[4] Exhibit P1.

[5] N.T. p. 74, 103.

[6] N.T. p. 76-77, 106.

[7] N.T. p. 75, Exhibit P2.

[8] N.T. p. 77, 108-09.

[9] Exhibit P3.

[10] N.T. p. 85.

[11] N.T. p. 130.

[12] N.T. p. 88.

[13] N.T. p. 20, 84-85.

[14] N.T. p. 23, 85.

[15] N.T. p. 22-23.

[16] N.T. p. 23.

[17] *Id.*

[18] N.T. p. 86.

[19] N.T. p. 94.

[20] *Id.*

[21] N.T. p. 95.

[22] *Id.*

[23] N.T. p. 78. A third check dated June 23, 2017 for $10,000.00 listed on Exhibit R1 was not received by Appellee, endorsed or deposited. N.T. p. 79.

[24] Exhibit R1.

[25] N.T. p. 81.

[26] Exhibit P8; Exhibit P9.

[27] N.T. p. 6, Stipulated Fact No. 15.

[28] N.T. p. 81, Exhibit R1.

[29] N.T. p. 75, 85-86, 78-81.

[30] *Shafer Elec. & Const. v. Mantia,* 626 Pa. 258, 269, 96 A.3d 989, 996 (2014).

[31] *Durst v. Milroy Gen. Contracting, Inc.,* 2012 PA Super 179, 52 A.3d 357, 360 (2012) (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.,* 606 Pa. 584, 2 A.3d 526, 532 fn. 8 (2010) (citing Black's Law Dictionary (8th ed.2004)).

[32] *Durst v. Milroy Gen. Contracting, Inc.,* 2012 PA Super 179, 52 A.3d 357, 360 (2012) (citing *Schenck v. K.E. David, Ltd.,* 446 PA Super 94, 666 A.2d 327 (1995).

[33] *Id.*

[34] *Id.*

[35] N.T. p. 141-42.

[36] *See generally, Jackson v. Hendrick,* 457 Pa. 405, 411, 321 A.2d 603, 606 (1974) (citing 1 J. Pomeroy, Treatise on Equity Jurisprudence.)

[37] Petitioner's Petition to Show Cause Why the Administratrix Should Not Release Funds Held in Escrow, Or, in the Alternative, File an Accounting for Audit; *See Durst v. Milroy General Contracting, Inc.,* 2012 PA Super 179, 52 A.3d 357, 360 (2012) (Finding that were the home owner had accepted and retained a benefit from the contractor, it would be inequitable for the home owner's to retain the home improvements without compensating the contractor.).

[38] *Berg Co. v. Douredoure Bros.,* 5 Pa. D. & C 597 (1925).

[39] N.T. p. 67, 78-81.

[40] *See Stash & Sons v. New Holland Credit Co.,* 905 A.2d 541 (Pa. Super. 2006) (Finding that Defendant below was estopped from using the Fictitious Names Act to claim Plaintiff lacked the legal capacity to sue when Defendant accepted the benefits of the business transactions, had full knowledge of the party's true identity notwithstanding the fictitious name, and did not show that they were harmed by the fictitious name.).

[41] N.T. p. 78-81.

[42] *Blackburn v. King Inv. Grp., LLC,* 2017 PA Super 89, 162 A.3d 461, 464 (2017) (quoting *Provident Nat'l Bank v. Rooklin,* 250 Pa.Super. 194, 378 A.2d 893, 897 (1977)).

19